# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ELIZABETH LONG,

Defendant-Appellant.

UNPUBLISHED
December 19, 2017

No. 332900
St. Clair Circuit Court
LC No. 15-002302-FC

Before: METER, P.J., and BORRELLO and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions for second-degree murder, MCL 750.317, and second-degree child abuse, MCL 750.136b(3). She also appeals her sentences of 22 to 50 years' imprisonment for second-degree murder, and 5 to 10 years' imprisonment for second-degree child abuse. We affirm defendant's convictions but remand for resentencing.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The victim, defendant's 16-month-old son, died after receiving a lethal dose of diphenhydramine, commonly known as Benadryl. Over defendant's objection, the prosecution introduced evidence that defendant had a long history of overusing and abusing prescription painkillers, and when she did abuse them she would become incapacitated to the point of passing out and hurting herself or putting her children in danger. Despite this history and her awareness of it, on the day of the victim's death, defendant tested positive for hydrocodone (Vicodin), morphine, and hydromorphone (a metabolite of morphine). She did not have a prescription for morphine and, within the span of two days, she had used 37 hydrocodone pills. This dosage amount far exceeded the maximum she had been prescribed.

Further, the victim child's blood showed a concentration of Benadryl more than ten times higher than the average concentration for a normal dose, and the medical examiner ruled that the victim died from diphenhydramine intoxication.

The prosecution charged defendant with second-degree murder on the theory that defendant's history with prescription painkillers made her aware that when she abused those drugs, she would become incapacitated, pass out, and fall, which caused her serious injuries. Defendant's history with prescription painkillers also revealed that when she became incapacitated her children were at risk and she made poor decisions regarding their health. At

trial, the prosecution alleged that defendant's knowledge of the effects caused by her abuse of prescription painkillers, her decision to abuse prescription painkillers while being the victim's sole provider on the day in question, and his subsequent death due to a Benadryl overdose satisfied the malice requirement for second-degree murder. Defendant moved for a directed verdict on the ground that there was not sufficient evidence to support a second-degree murder conviction because the prosecution's theory of the case was not permitted under the law. The trial court denied that motion.

Defendant testified that she gave the victim a one-teaspoon dose of Benadryl and was not high on prescription painkillers at the time of the victim's death. Defendant also presented expert witness testimony suggesting that the morphine in defendant's saliva may have come from the consumption of poppy seeds, and that the concentration of Benadryl in the victim's blood may have been substantially lower than the average range of fatal doses for children.

After a nine-day trial, the jury found defendant guilty of second-degree murder. The defendant was sentenced as noted and this appeal followed.

## II. DIRECTED VERDICT

Defendant argues that the trial court erred in denying her motions for a directed verdict and to quash the felony information after preliminary examination. We disagree.

### A. STANDARD OF REVIEW AND APPLICABLE LAW

First, we note that we need only consider the trial court's decision regarding defendant's motion for directed verdict because "the presentation of sufficient evidence to convict at trial renders any erroneous bindover decision harmless." *People v Bennett*, 290 Mich App 465, 481; 802 NW2d 627 (2010). See also *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006) ("While defendant argues that the trial court committed error by failing to quash the information, where a defendant has received a fair trial, appellate review is limited to the trial court's denial of the defendant's motion for directed verdict.").

"We review de novo a trial court's decision whether to deny a motion for a directed verdict." *People v Chelmicki*, 305 Mich App 58, 64; 850 NW2d 612 (2014). "In assessing a motion for a directed verdict of acquittal, a trial court must consider the evidence presented by the prosecution to the time the motion is made[.]" *People v Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d 611 (2003). In so doing, "we review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Schrauben*, 314 Mich App 181, 198; 886 NW2d 173 (2016) (internal quotations omitted). "Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime." *People v Gould*, 225 Mich App 79, 86; 570 NW2d 140 (1997).

Defendant only challenges the sufficiency of the evidence supporting her second-degree murder conviction, not second-degree child abuse. "In order to convict a defendant of second-degree murder, the prosecution must prove: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Roper*, 286 Mich App 77, 84; 777 NW2d 483 (2009) (internal quotation marks omitted). On appeal, defendant only challenges the

malice element of second-degree murder. "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). "The malice element for depraved heart murder is general mens rea." *Id*. "[I]ntent may be inferred from circumstantial evidence." *People v Henderson*, 306 Mich App 1, 11; 854 NW2d 234 (2014). "Indeed, 'because it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind[.]' " *Id*., quoting *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

Defendant's primary argument is that the prosecution's legal theory regarding second-degree murder was improper. Defendant insists that the prosecution could not prove malice by presenting evidence that defendant had a history of abusing prescription painkillers, becoming incapacitated, and injuring herself or subjecting her children to potential injury while she was incapacitated.

"Malice may be inferred from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002). "Because depraved heart murder is a general intent crime, the accused need not actually intend the harmful result." *Goecke*, 457 Mich at 466. "One way of expressing this concept is that malice may be established even absent an actual intent to cause a particular result if there is wanton and wilful disregard of the likelihood that the natural tendency of a defendant's behavior is to cause death or great bodily harm." *Id*. "The prosecution is not required to prove that the defendant actually intended to harm or kill. Instead, the prosecution must prove the intent to do an act that is in obvious disregard of life-endangering consequences." *Werner*, 254 Mich App at 531.

## B. ANALYSIS

There was sufficient evidence presented at trial to establish defendant's malice. Medical records show that defendant had a long history of using prescription painkillers. In the year preceding the victim's death, defendant repeatedly used her prescription painkillers too quickly. In the eight months preceding his death, defendant fell down seven different times. After a fall in December of 2014, defendant had two black eyes and a visible bump on her head. Defendant fell again in January of 2015, around one month before the victim's death, which required defendant to stay in the hospital for an entire weekend due to her injuries. Two weeks before the victim's death, defendant passed out and could not be awoken at the same time she left her child, the victim, perched atop a diaper changing table. Defendant's eight-year-old son had to call 911 to come and revive her. The police at the incident stated that defendant appeared high on drugs.

Defendant had received a new prescription for oxycodone the day before that incident. Likewise, on the day before the victim's death in this case, again one day after receiving a new prescription for painkillers, defendant committed several drug induced missteps. She stalled her van in the middle of the road on her way to a store. Defendant then proceeded to leave the victim home alone with his eight-year-old brother while she sought help to move the van. The police were called and a police officer told defendant that it would be inappropriate to leave her

children alone with her other son. Later that same day, ignoring the police officer, defendant did just that. She left the victim in the care of his eight-year-old brother.

On the day of the victim's death, defendant gave him a dose of Benadryl. She told police that the victim had been whiney, clingy, and sick in the days prior. Although defendant told the police that she only gave him one teaspoon of the drug, his autopsy and the testimony of expert witnesses revealed that the victim received a substantially large dose of Benadryl. Indeed, the concentration of Benadryl in the victim's blood was more than 10 times the level expected from a normal dose of the drug. The medical examiner declared that the victim died from Benadryl intoxication. When the police arrived at the scene, rigor mortis already had set in, which caused witnesses to opine that the victim had been dead for some time before defendant called 911. Defendant also appeared groggy and lethargic, and several witnesses testified that they thought she was high on drugs. Further, defendant's two-day-old bottle of hydrocodone was missing 37 pills, and defendant had morphine in her system, a narcotic that had not been prescribed to her.

Viewing the evidence in the light most favorable to the prosecution, as we must, *Schrauben*, 314 Mich App at 198, a reasonable juror could have concluded that defendant's overuse of the prescription medication was causing her to pass out and become completely incapacitated. A reasonable juror also could infer that defendant was aware that her drug use could not only cause a great deal of harm to her, but also to the victim. In the aftermath of the incidents described above, she had become aware of the danger to the victim that could result from her drug induced states. Even more so, a child protective services (CPS) investigation into her care had been initiated as a result.

Further juror inferences could be made regarding the day of the victim's death, as defendant had once again abused prescription medications and became incapacitated. It was during that incapacitation that defendant gave the victim a lethal dose of Benadryl, and then passed out while he died on the couch. It was only when she regained consciousness and discovered the victim's corpse did she call the police. Even then, defendant was groggy and appeared high. Later, defendant fell asleep while awaiting questioning in the police interview room, which supported that defendant was once again suffering the familiar effects of her abuse of prescription drugs.

We find the reasoning in *Werner*, 254 Mich App 528, to be persuasive and binding authority in support of the trial court's decision to deny defendant's motion for directed verdict. The factual similarities between *Werner* and the instant case are striking. In both cases, the defendants were charged with second-degree murder due to deaths that resulted when they were intoxicated. *Id*. at 530. In *Werner*, the defendant drove while intoxicated and killed another driver on the road, while in the instant case, defendant administered a fatal dose of Benadryl to the victim when defendant was high on prescription drugs. The panel in *Werner* held that there was sufficient evidence to show that the defendant had the requisite malice for second-degree murder because the defendant had recently gotten intoxicated, drove his vehicle, blacked out, and crashed the vehicle into boulders in front of a house. *Id*. at 533-534. In the present case, defendant had a long history of passing out from abusing her prescription painkillers. Just two weeks before the victim's death, defendant passed out while the victim was stranded on top of a four-foot tall table. She could not be woken up even when being alerted by her other son. Also, while in another drug induced state, she intended to leave her young children without any

supervision. Additionally, on more than once occasion, defendant passed out and fell down, causing significant injuries to her own body.[1]

Like the defendant in *Werner*, the defendant here argues that a reasonable juror could not have found her to have the requisite malice where none of her prior issues with prescription drugs had led to an injury suffered by her children. In the *Werner* case, though, that argument was found to be without merit, as the defendant had knowledge of previously passing out while driving drunk and hitting boulders. Like the defendant here, Werner knew that he could black out again and that even more tragic consequences could occur. *Id*. at 533-534. Similarly, in the instant matter, defendant's history of passing out while high on prescription drugs in situations that caused her injury and put her children in harm's way, put her on notice that should she continue to abuse prescription painkillers, her incapacitation due to that use would lead to more serious, and perhaps deadly, consequences. This Court in *Werner*, 254 Mich App at 532-534, held that such awareness is sufficient to survive a motion for directed verdict on the issue of malice and we reach the same holding here.

The trial court properly denied defendant's motion for a directed verdict because there was sufficient evidence for a reasonable juror to determine that defendant committed second-degree murder. See *id*.[2]

## III. OTHER ACTS EVIDENCE

Defendant argues that the trial court abused its discretion in admitting the prosecution's proposed other acts evidence. We disagree.

## A. STANDARD OF REVIEW AND APPLICABLE LAW

"When the issue is preserved, we review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *Chelmicki*, 305 Mich App at 62. "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Waterstone*, 296 Mich App at 131-132.

"Evidence of other crimes or bad acts is admissible when it is offered for a proper purpose, MRE 404(b)(1); it is relevant under MRE 402; and its probative value is not substantially outweighed by unfair prejudice, MRE 403." *People v Bergman*, 312 Mich App 471, 493; 879 NW2d 471 (2015).

---

[1] Indeed, after one fall, defendant spent the weekend in the hospital.

[2] Because the jury convicted defendant based on sufficient evidence, any alleged issue with the trial court's denial of defendant's motion to quash the felony information after bindover was harmless, and therefore, need not be considered. See *Gillis*, 474 Mich at 113; see also *Bennett*, 290 Mich App at 481.

In Michigan, MRE 404(b) regulates the admissibility of evidence of "[o]ther crimes, wrongs, or acts[.]" Indeed, MRE 404(b)(1) sets out that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." MRE 404(b), however, "is not exclusionary, but is inclusionary, because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character." *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010). That "nonexhaustive list of reasons" includes "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case." MRE 404(b)(1).

Generally, "[a]ll relevant evidence is admissible[.]" MRE 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Even where evidence is considered to be relevant, the evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." MRE 403. Notably, MRE 403 does not regulate evidence that is simply "prejudicial" because "[r]elevant evidence is inherently prejudicial." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995) (internal quotations omitted). Rather, "[i]t is only when the probative value is *substantially outweighed* by the danger of unfair prejudice that evidence is excluded." *Id*.

## B. ANALYSIS

The trial court allowed evidence that defendant had a long medical history of overusing prescription painkillers which resulted in falls, passing out while the victim was on a changing table just about two weeks before his death, and that she had left her van stalled in the middle of her road while then intending to leave the victim home alone with his eight-year-old brother. Defendant argues that because that evidence did not show that defendant's use of prescription painkillers had previously led to harming her children, it was not admissible for any proper purpose, was irrelevant to the issues presented at trial, and that any probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

Our previous decision in *Werner*, 254 Mich App at 538-540, again provides persuasive guidance on this issue. To establish whether the *Werner* defendant had the requisite malice, the prosecution introduced evidence that the defendant had, three weeks before the fatal accident, driven drunk, blacked out, and crashed his car into some boulders in front of a house. *Id*. at 539-540. On appeal, the defendant challenged the admission of that evidence, arguing similarly to defendant in the instant case – i.e., that the evidence was inadmissible because it did not show that the defendant's prior instance of drunk driving made him aware that he was any danger to other drivers. *Id*. at 538. In *Werner*, we reasoned that the evidence was admissible to show knowledge and lack of mistake because it "showed that [the] defendant knew that heavy drinking could lead to a black out, and that a blackout could lead to [the] defendant's driving without any understanding of what he was doing." *Id*. at 539-540. The *Werner* panel also held that the evidence was relevant to the issue of malice, making it more probable that the defendant was aware of the potential consequences of his actions, and that the evidence was not unfairly

prejudicial considering that it was substantially less prejudicial than the accusation that the defendant had killed someone while driving drunk. *Id*. at 540.

Like *Werner*, the evidence offered by the prosecution in the instant case was admissible to show defendant's knowledge that abusing prescription painkillers often rendered her totally incapacitated to the point where she was a danger to herself and her children, and that her intoxication by prescription painkillers on the day of the victim's death was not a mistake. See *id*. at 539-540; MRE 404(b)(1). Additionally, defendant's knowledge of her issues and the dangers they entailed, and her decision on the day of the victim's death to engage in that behavior anyway, was relevant to show that defendant had the requisite malice for second-degree murder. MRE 402; *Werner*, 254 Mich App at 540. Finally, the evidence was not unfairly prejudicial because in comparison to the accusation that defendant got intoxicated on prescription painkillers and killed her 16-month-old son by giving him a lethal dose of Benadryl, the other acts evidence was substantially less tragic. MRE 403; *Werner*, 254 Mich App at 540.

The trial court did not abuse its discretion when it admitted the other acts evidence. See *Bergman*, 312 Mich App at 493-494; see also *Werner*, 254 Mich App at 539-540.

## IV. SENTENCING GUIDELINES SCORING ERRORS

Defendant argues that the trial court erred in scoring her offense variables (OVs), which led to an erroneous guideline range and requires resentencing. We agree.

## A. STANDARD OF REVIEW AND GENERAL LAW

For preserved issues "[u]nder the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

"When challenged, a sentencing factor need only be proved by a preponderance of the evidence." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012), aff'd 495 Mich 33 (2014). "Offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable." *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009). "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). "The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *Earl*, 297 Mich App at 109.

## B. OV 1 & OV 2

Defendant first challenges the scoring of OVs 1 and 2, which are necessarily linked. OV 1 is scored with respect to the "aggravated use of a weapon." MCL 777.31(1). Meanwhile, OV 2 is scored based on the "lethal potential of the weapon possessed or used." MCL 777.32(1). OV 1 should be scored at 20 points, as it was in this case, where "[t]he victim was subjected or

exposed to a . . . harmful chemical substance[.]" MCL 777.31(1)(b). Similarly, OV 2 should be scored at 15 points, as it was in this case, where "[t]he offender possessed or used a . . . harmful chemical substance[.]" MCL 777.32(1)(a). Even when something is considered a "harmful chemical substance" OVs 1 and 2 require "that it must be used as a 'weapon' in order to justify assessing" any score. *People v Gary*, 305 Mich App 10, 12-13; 849 NW2d 414 (2014). While the statutory scheme does not define the word "weapon," this Court has previously turned to dictionary definitions to assist in construing the term. *People v Ball*, 297 Mich App 121, 125; 823 NW2d 150 (2012). "*Random House Webster's College Dictionary* (2001) defines [weapon] as '1. any instrument or device used for attack or defense in a fight or in combat.' " *Ball*, 297 Mich App at 125.

The evidence produced at trial showed that defendant gave the victim a lethal dose of Benadryl in a manner that exhibited a "wanton and wilful disregard of the likelihood that the natural tendency of a defendant's behavior is to cause death or great bodily harm." *Goecke*, 457 Mich at 466. The record did not support, however, that defendant used the Benadryl "for attack or defense in a fight or in combat" against the victim. *Ball*, 297 Mich App at 125 (internal quotation marks omitted). In *Ball*, we held that heroin was not used as a weapon where the victim bought heroin from the defendant, the victim voluntarily used the heroin, and died as a result. *Id*. at 126. We reasoned that there was "no evidence that [the] defendant forced the victim to ingest the heroin against his will[,]" positing that heroin could be used as a weapon where someone "forcibly inject[ed] heroin into an unwilling victim for the purpose of killing that person by means of a heroin overdose." *Id*. at 125-126. Similarly, in the present case, there was no evidence on the record that defendant administered the Benadryl to the victim with the intent to attack the victim or for the purpose of killing him by a Benadryl overdose, despite that being the end result. In sum, there was no evidence that defendant used the Benadryl as a weapon. See *id*. Therefore, because both OVs 1 and 2 require the harmful chemical substance to be used as a weapon in order to be scored, the trial court should have scored both variables at zero points. See *id*.; see also *Gary*, 305 Mich App at 14.

Consequently, defendant's OV score must be reduced by 35 points for the improper scoring of OVs 1 and 2. MCL 777.31; MCL 777.32.

## C. OV 3

Defendant and the prosecution both agree that OV 3 should have been scored at 25 points instead of 50 points, as it was scored by the trial court. Because the Michigan Supreme Court's decision in *People v Houston*, 473 Mich 399, 401-402; 702 NW2d 530 (2005), requires a score of 25 points for OV 3, we agree.

Thus, the trial court should have scored OV 3 at 25 points, a reduction of 25 points from the original score of 50. MCL 777.33.

## D. OV 10

Lastly, defendant challenges the scoring of OV 10. Purusant to MCL 777.40(1), OV 10 "is exploitation of a vulnerable victim." OV 10 is properly scored at 10 points, as it was in this case, where "[t]he offender exploited a victim's . . . youth[.]" MCL 777.40(1)(b). Defendant, on

appeal, does not challenge that the victim was a "vulnerable person[,]" which is a prerequisite to assigning any points under OV 10. *People v Cannon*, 481 Mich 152, 158; 749 NW2d 257 (2008). Instead, defendant argues that she did not exploit the victim's vulnerability. The statute defines "exploit" as "to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b). "Accordingly, to merit a score of 10 points for OV 10, a defendant must have manipulated a young victim for a selfish or unethical purpose." *People v Needham*, 299 Mich App 251, 255; 829 NW2d 329 (2013).

The record revealed evidence that defendant described the victim, in the days preceding his death, as being sick, whiney, and clingy. Defendant also stated that the victim was having trouble sleeping. Defendant's husband testified that it was not customary for them to give Benadryl to the victim in the morning, knowing that it usually helped the victim sleep at night. Despite that, on the morning of the victim's death, defendant gave him a substantial dose of Benadryl. Defendant testified that she was relieved when the victim fell asleep after taking the Benadryl. In considering that evidence, the trial court did not clearly err in finding that defendant had provided the victim with Benadryl so that he would go to sleep and be out of her way. Indeed, it is a logical inference that defendant would want the victim to be sound asleep while she abused prescription painkillers. Considering that the trial court did not clearly err in that factual finding, there was a preponderance of the evidence in support of the trial court's determination that OV 10 be scored at 10 points. Specifically, there was a preponderance of evidence that defendant manipulated the young victim for the selfish purpose of getting high on prescription painkillers without having to care for her child. MCL 777.40(2)(b); see also *Needham*, 299 Mich App at 255.

Thus, the trial court properly scored OV 10 at 10 points. MCL 777.40(1)(b).

V. CONCLUSION

We affirm defendant's convictions, but vacate her sentences and remand for resentencing.

At sentencing, the trial court sentenced defendant with an OV score of 135. Considering the corrected errors, the proper OV score should have been 75 points, changing the minimum sentence guideline range from 225 to 375 months' or life imprisonment, to 180 to 300 months' or life imprisonment. MCL 777.61. Consequently, "[b]ecause defendant's sentence here is based upon an inaccurate calculation of the guidelines range and is, therefore, inconsistent with the law, defendant is entitled to be resentenced." *People v Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006).

We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Michael J. Riordan

-9-