PEOPLE v WERNER

Docket No. 226394. Submitted October 10, 2002, at Detroit. Decided October 25, 2002. Approved for publication December 27, 2002, at 9:05 A.M.

Paul D. Werner was convicted by a jury in the Oakland Circuit Court, Colleen A. O'Brien, J., of second-degree murder, operating a motor vehicle while under the influence of intoxicating liquor (OUIL) causing death, OUIL causing serious impairment of bodily function, and driving with a suspended license, second offense. The convictions arose out of an incident in which the defendant, while intoxicated, drove his truck in the wrong direction on a busy freeway and collided with another vehicle head-on, killing a passenger and seriously injuring the driver of that vehicle. The defendant appealed.

The Court of Appeals *held*:

1. The trial court did not err in denying the defendant's motion for a directed verdict of acquittal on the charge of second-degree murder. The offense of second-degree murder consists of a death caused by an act of the defendant with malice and without justification or excuse. Malice is the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. In this case there was sufficient evidence of malice. The prosecution proved malice by showing that shortly before the accident the defendant had an episode of an alcohol-induced blackout while driving, and that the defendant nonetheless drank heavily the day of the accident before driving his truck.

2. The defendant was not denied the effective assistance of counsel at trial. To establish ineffective assistance of counsel, a defendant must show that the attorney's performance was objectively unreasonable in light of prevailing professional norms and that, but for the attorney's error or errors, a different outcome reasonably would have resulted. There is no evidence in this case to support the defendant's claim that counsel's failure to present an involuntary intoxication defense was objectively unreasonable, or that the presentation of the defense would have resulted in acquittal.

3. The defendant's convictions of second-degree murder and OUIL causing death do not violate the protections of US Const, Am V and Const 1963, art 1, § 15 against double jeopardy. The second-degree murder statute and the OUIL causing death statute enforce distinct societal norms, and each statute contains elements not found in the other. For those reasons, punishment under both statutes does not constitute a double jeopardy violation and the prosecutor did not abuse his discretion in pursuing charges of second-degree murder and OUIL causing death.

4. Plain error did not result from the trial court's instructing the jurors to make certain that their doubts are fair with respect to reasonable doubt.

5. The trial court did not abuse its discretion in admitting evidence of a prior incident of drunken driving by the defendant. The evidence was properly admitted under MRE 404(b) because it was offered for a proper purpose under MRE 404(b) (to show knowledge by the defendant that his heavy drinking could cause him to black out while driving), it was relevant, its probative value outweighed the danger of unfair prejudice, and the trial court gave an appropriate limiting instruction.

6. The trial court did not err in excluding evidence that the decedent was not wearing a seat belt at the time of the collision. Evidence of failure to use a seat belt would be relevant only where the defendant could show that the failure was the sole cause of harm to the decedent. Because the defendant cannot make such a showing, the trial court properly excluded evidence of the decedent's failure to wear a seat belt.

Affirmed.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Joyce F. Todd*, Chief, Appellate Division, and *Marilyn J. Day*, Assistant Prosecuting Attorney, for the people.

*Neil J. Leithauser* for the defendant on appeal.

Before: SAAD, P.J., and SMOLENSKI and OWENS, JJ.

PER CURIAM. A jury convicted defendant of second-degree murder, MCL 750.317; operating a motor vehicle while under the influence of intoxicating liquor

(OUIL) causing death, MCL 257.625(4); OUIL causing serious impairment of a bodily function, MCL 257.625(5); and driving with a suspended license, second offense, MCL 257.904(1). The trial court sentenced defendant to concurrent prison terms of twenty-five to forty years, one hundred months to fifteen years, thirty-eight months to five years, and one year for the respective convictions. He appeals as of right, and we affirm.

On July 18, 1999, defendant became intoxicated and drove his pick-up truck in the wrong direction on a busy freeway. He collided head-on with a Jeep, killing the passenger and seriously injuring the driver.

I

Defendant says that the trial court should have granted his motion for a directed verdict because the evidence was insufficient to support a conviction of second-degree murder. We disagree.

"When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001). When a defendant challenges the sufficiency of the evidence in a criminal case, this Court considers whether the evidence, viewed in a light most favorable to the prosecution, would warrant a reasonable juror to find guilt beyond a reasonable doubt. *People v Nowack*, 462 Mich 392, 399; 614 NW2d

78 (2000); *People v Sexton*, 250 Mich App 211, 222; 646 NW2d 875 (2002).

The elements of second-degree murder are " '(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse.' " *Aldrich, supra* at 123, quoting *People v Mayhew*, 236 Mich App 112, 125; 600 NW2d 370 (1999), quoting *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). Malice is defined as "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Goecke, supra* at 464. Malice may be inferred from evidence that the defendant "intentionally set in motion a force likely to cause death or great bodily harm." *People v Djordjevic*, 230 Mich App 459, 462; 584 NW2d 610 (1998). The prosecution is not required to prove that the defendant actually intended to harm or kill. Instead, the prosecution must prove " 'the intent to do an act that is in obvious disregard of life-endangering consequences.' " *Aldrich, supra* at 123, quoting *Mayhew, supra* at 125.

Here, the prosecution showed that defendant drove after becoming seriously intoxicated. Moreover, defendant knew from a recent prior incident that if he drank, he might experience a blackout and drive recklessly and irresponsibly. Defendant contends, however, that in *Goecke, supra,* our Supreme Court required a subjective showing of awareness of a risk of death or great bodily harm when a defendant is severely intoxicated. Defendant's argument mischaracterizes the analysis in *Goecke*. In *Goecke*, the Supreme Court reviewed three cases where a defen-

dant was charged with second-degree murder for a fatality caused by the defendant's drunken driving. The Supreme Court declined to choose between an objective and subjective standard for determining whether the defendant was aware that his conduct carried a high risk of death or great bodily harm. The choice was unnecessary because the facts of all three cases established the requisite malice for second-degree murder under either standard. *Goecke, supra* at 465. However, the Court noted in dicta that a "highly unusual case" might "require a determination of the issue whether the defendant was subjectively aware of the risk created by his conduct." *Id.* at 464-465, citing 2 LaFave & Scott, Substantive Criminal Law, § 7.4(b), p 205.

Defendant claims that this case is the type of unusual case requiring a determination that he was subjectively aware of the risk of his conduct. We disagree. *Goecke* did not expressly prescribe a subjective analysis for malice in cases of extreme intoxication. Quoting LaFave & Scott, *supra*, the Court recognized that, theoretically, a "highly unusual case" may require a determination whether the defendant was subjectively aware of the risk his conduct created, such as where the defendant was " 'more absent-minded, stupid or intoxicated than the reasonable man.' " *Goecke, supra* at 464-465 & n 25. This is not the same as stating, as defendant suggests, that the prosecution should have been held to a higher standard of proof of intent because defendant was so severely intoxicated. If defendant's argument is correct, it would mean that moderately intoxicated drivers could be tried for and convicted of second-degree murder while severely intoxicated drivers would be

excused because they were too intoxicated to know what they were doing. This would be contrary to the *Goecke* Court's statement that "malice requires egregious circumstances." *Id.* at 467. It also would effectively create for some defendants an intoxication defense to second-degree murder, which would be plainly contrary to the *Goecke* Court's holding that voluntary intoxication is not a defense to a second-degree murder charge. *Id.* at 464. Accordingly, an advanced state of voluntary intoxication is not sufficient to qualify as the sort of "unusual case" that requires a subjective determination of awareness under *Goecke*.

We also recognize that *Goecke* held that not every intoxicated driving case resulting in a fatality constitutes second-degree murder. However, the evidence in this case disclosed "a level of misconduct that goes beyond that of drunk driving." *Id.* at 469. This is not a case where a defendant merely undertook the risk of driving after drinking. Defendant knew, from a recent prior incident, that his drinking did more than simply impair his judgment and reflexes. He knew that he might actually become so overwhelmed by the effects of alcohol that he would completely lose track of what he was doing with his vehicle. If defendant knew that drinking before driving could cause him to crash on boulders in front of a house, without any knowledge of where he was or what he was doing, he knew that another drunken driving episode could cause him to make another major mistake, one that would have tragic consequences.

Although there is no evidence regarding defendant's behavior between his departure from Charlie Parrish's house and the fatal collision, or regarding his state of

mind just before the crash, we are satisfied that the prosecution met its burden by showing that defendant had a recent episode of an alcohol-induced blackout while driving, but that he nonetheless drank heavily while he was out with his vehicle. The trial court did not err in denying the motion for a directed verdict, and the evidence was sufficient to support defendant's conviction.

II

Defendant claims that he was denied the effective assistance of counsel because his attorney failed to investigate and present a defense of involuntary intoxication. We disagree.

To establish ineffective assistance of counsel, a defendant must show (1) that the attorney's performance was objectively unreasonable in light of prevailing professional norms and (2) that, but for the attorney's error or errors, a different outcome reasonably would have resulted. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001); *People v Harmon*, 248 Mich App 522, 531; 640 NW2d 314 (2001). A defendant must affirmatively demonstrate that counsel's performance was objectively unreasonable and so prejudicial as to deprive him of a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994); *People v Ortiz*, 249 Mich App 297, 311; 642 NW2d 417 (2002).

Because defendant did not move for a new trial or an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973), our review is limited to mistakes apparent on the record. *People v Watkins*, 247 Mich App 14, 30; 634 NW2d 370 (2001). There is no evidence on the record to support

defendant's claim that counsel's failure to present an involuntary intoxication defense was objectively unreasonable, or that the presentation of the defense would have resulted in acquittal. Nothing in the record shows that an expert would have testified in support of an involuntary intoxication defense, or that scientific evidence was available to bolster this claim. Furthermore, the evidence showed that defendant's beer consumption was sufficient, by itself, to intoxicate him without the Tylenol 3 that he also consumed. Moreover, defendant would not have been able to show that his intoxication was involuntary because he admitted that the Tylenol 3 bottle had a warning label, and that he wilfully drank alcohol after taking the medicine. Thus, this issue is without merit.

III

Defendant claims that his dual convictions of second-degree murder and OUIL causing death violate the Double Jeopardy Clauses of the federal and state constitutions, US Const, Am V; Const 1963, art 1, § 15. This claim is based on the erroneous assumption that the double jeopardy provisions necessarily preclude conviction of both an offense and a lesser cognate offense. A dual prosecution and conviction of a higher offense and a lesser cognate offense are permissible where the Legislature intended to impose cumulative punishment for similar crimes, even if both charges are based on the same conduct. *People v Lugo*, 214 Mich App 699, 705-706; 542 NW2d 921 (1996).

In *People v Kulpinski*, 243 Mich App 8; 620 NW2d 537 (2000), this Court found no double jeopardy implications where a defendant was convicted of both

OUIL causing death and involuntary manslaughter, MCL 750.321. Because the Legislature intended for the two statutes to enforce distinct societal norms, and because each statute contained an element not found in the other, the Court concluded that multiple punishments were permissible. *Id.* at 18-24; see also *People v Price*, 214 Mich App 538; 543 NW2d 49 (1995). This reasoning applies with equal force to dual convictions of second-degree murder and OUIL causing death. If the Legislature intended for the OUIL causing death statute to enforce societal norms that are distinct from the societal norms enforced by the involuntary manslaughter statute (grossly negligent conduct), it clearly also intended the OUIL statute to enforce societal norms other than those enforced by the second-degree murder statute (proscribing wanton conduct likely to cause death or great bodily harm). *Id.* at 543-544; *Kulpinski, supra* at 22-23. Moreover, the OUIL causing death statute and the second-degree murder statute each contain an element not found in the other. The OUIL causing death statute includes the element of operating a motor vehicle with a specified blood alcohol level, but not the element of malice; the converse is true of the second-degree murder statute. *Price, supra* at 545-546; *Kulpinski, supra* at 23-24. Accordingly, defendant's convictions of both second-degree murder and OUIL causing death do not violate the Double Jeopardy Clauses.

We also find no abuse of prosecutorial discretion in the prosecution's decision to pursue charges under both the second-degree murder statute and the OUIL causing death statute. Defendant misstates the law when he claims that he should have been charged

only under the OUIL statute because it is the more specific and more recently enacted statute. The OUIL causing death statute does not merely carve out an exception to the second-degree murder statute; it enforces distinct societal norms and it includes an element not present in the second-degree murder statute. *People v Peach*, 174 Mich App 419; 437 NW2d 9 (1989).

Defendant relies on *People v Patterson*, 212 Mich App 393; 538 NW2d 29 (1995), wherein this Court held that the prosecution abused its discretion when it charged the defendant with larceny over $100, MCL 750.356, instead of the more recent and specific offense of larceny of livestock, MCL 750.357a. The instant case, however, is not analogous to *Patterson*, because there the latter statute prohibits a class of offenses that almost always will be a subset of the class of offenses prohibited by the former statute. This is not true of the OUIL causing death and second-degree murder statutes.

IV

Defendant claims that the trial court's instruction on reasonable doubt was erroneous because it unconstitutionally weakened the standard for reasonable doubt by requiring the jurors to make certain their doubts are "fair." Because this issue was not preserved with an appropriate objection at trial, we review it for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999); *People v Knapp*, 244 Mich App 361, 375; 624 NW2d 227 (2001).

This Court has already considered and rejected the claim that the transition from CJI 3:1:04 to CJI2d 3.2 weakened the concept of reasonable doubt. *People v Snider*, 239 Mich App 393, 420-421; 608 NW2d 502 (2000); *People v Cooper*, 236 Mich App 643, 656; 601 NW2d 409 (1999). Moreover, both the current instruction and the former instruction state that the juror's doubt must be "fair," so this is not a new requirement as defendant suggests. Consequently, we find no plain error in the trial court's instruction.

V

Defendant argues that the trial court erred in admitting evidence of his June 23, 1999, drunken driving incident. A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *People v Manser*, 250 Mich App 21, 31; 645 NW2d 65 (2002). "An abuse of discretion exists when the court's decision is so grossly violative of fact and logic that it evidences perversity of will, defiance of judgment, and the exercise of passion or bias." *People v Ullah*, 216 Mich App 669, 673; 550 NW2d 568 (1996).

MRE 404(b)(1) provides the following rules for admitting evidence that a defendant committed other crimes, wrongs, or acts:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

MRE 404(b) is intended to exclude character evidence, or evidence that would lead the jury to convict a defendant on the basis of his past conduct rather than on evidence of his conduct for the instant offense. *People v Starr*, 457 Mich 490; 577 NW2d 673 (1998); *People v Golochowicz*, 413 Mich 298, 308; 319 NW2d 518 (1982). The rule excludes evidence if it is not relevant to anything other than the defendant's character or propensity to commit bad acts. *People v VanderVliet*, 444 Mich 52, 63-64; 508 NW2d 114 (1993), mod 445 Mich 1205 (1994). However, if the evidence is relevant to some other issue, it is admissible under MRE 404(b). *VanderVliet, supra* at 65; *People v Sabin (After Remand)*, 463 Mich 43, 56-57; 614 NW2d 888 (2000); *Starr, supra* at 506.

The Court in *VanderVliet, supra* at 55, set forth a four-pronged test for determining whether prior acts evidence is admissible under MRE 404(b):

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.

The trial court properly admitted the evidence of defendant's prior drunken driving incident under this four-pronged test. First, the evidence was admitted for a proper purpose. MRE 404(b) specifically allows prior acts evidence to show knowledge and absence of mistake. Here, to show that defendant possessed the requisite degree of malice for second-degree murder, the prosecution showed that defendant knew that heavy drinking could lead to a blackout, and that a blackout could lead to defendant's driving without

any understanding of what he was doing. The fact that such an episode occurred only three weeks before the charged offense was highly material to the proper purpose of showing defendant's knowledge of the dangers of driving while intoxicated.

Regarding the second prong, the evidence was relevant. The fact that defendant had previously experienced an alcohol-induced blackout while driving made it more probable than not that he was aware this could happen to him. Regarding the third prong, the probative value outweighed the danger of unfair prejudice. The prosecution presented evidence that defendant drove the wrong way down a busy freeway at night and collided head-on with another vehicle, killing a twenty-two-year-old woman and seriously injuring a young man. Compared to this tragic incident, evidence that defendant was involved in a prior single-vehicle accident with no injury to anyone was not unduly prejudicial. Finally, regarding the fourth prong, the trial court gave an appropriate limiting instruction by stating to the jury that it "must not . . . decide that it shows that the Defendant is a bad person or that he is likely to commit crimes." Accordingly, the trial court did not abuse its discretion in admitting evidence of the prior incident.

VI

Defendant argues that the trial court erred in excluding evidence that the decedent was not wearing a seat belt at the time of the collision. He concedes that contributory negligence is not a viable defense to a homicide charge, but maintains that the trial court should have allowed the evidence as proof that defendant's conduct was not a substantial cause

of her death. The trial court excluded the evidence because it was not relevant to any issue in the case.

Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; *Aldrich, supra* at 114. Generally, all relevant evidence is admissible, unless otherwise provided by law, and evidence that is not relevant is not admissible. *Aldrich, supra* at 114; MRE 402. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

In *People v Moore*, 246 Mich App 172; 631 NW2d 779 (2001), this Court held that a defendant in a negligent homicide case could introduce evidence that the decedent was not using a seat belt at the time of the accident, provided the evidence was used only for the issue of causation, and not as a defense to criminal conduct. We find that *Moore* is distinguishable from the present case.

*Moore* involved a defendant charged under the negligent homicide statute, MCL 750.324. Proof of that offense requires that the defendant's conduct be a "substantial factor" in the decedent's death. *People v Tims*, 449 Mich 83, 95; 534 NW2d 675 (1995). The Supreme Court held in *Tims* that a cause-in-fact relationship would often be sufficient to prove the causation element, but also noted that "cases arise in which the death is so remote from the defendant's conduct that it would be unjust to permit conviction.

In such a case, the question for the jury is whether the defendant's conduct was the proximate or legal cause of the decedent's death." *Id.*

In *Moore*, the decedent's death was remote from the defendant's conduct. The decedent struck the defendant's vehicle while it was stationary, hit his head against the window, and lost control of his car. His car then collided with a third vehicle. *Moore, supra* at 178-179. The defendant was prepared to offer expert testimony that if the decedent had been wearing his seat belt, he would not have lost control of his car and would not have died in the accident. *Id.* at 178. The *Moore* Court concluded that, under these circumstances, the decedent's failure to use his seat belt was "clearly relevant" to the question whether the defendant's negligence caused the decedent's death. *Id.* at 178-179.

In contrast, the decedent's death in the instant case was not remote from the collision. Unlike in *Moore*, where the facts actually showed that wearing a seat belt might have changed the outcome of the accident, the facts here do not show that the decedent could have affected the course of events by wearing a seat belt. Defendant merely argues that the decedent might have survived the collision if she had been wearing a seat belt, but this argument is purely speculative and is without evidence to support it.

Furthermore, we do not believe that the holding in *Moore* applies to second-degree murder cases. Negligent homicide requires proof that the defendant's conduct was a "substantial" cause of the victim's death. *Tims, supra* at 95. The issue of proximate cause is thus relevant to the defendant's criminal liability. *Id.* However, in *People v Bailey*, 451 Mich 657; 549 NW2d

325 (1996), our Supreme Court applied a different proximate cause analysis in a voluntary manslaughter case:

> In assessing criminal liability for some harm, it is not necessary that the party convicted of a crime be the sole cause of that harm, only that he be a contributory cause that was a substantial factor in producing the harm. The criminal law does not require that there be but one proximate cause of harm found. Quite the contrary, all acts that proximately cause the harm are recognized by the law. [*Id.* at 676.]

The Court explained that "[w]here an independent act of a third party intervenes between the act of a criminal defendant and the harm to a victim, that act may only serve to cut off the defendant's criminal liability where the intervening act is the sole cause of harm." *Id.* at 677.

Under *Bailey*, evidence of the decedent's failure to use a seat belt would be relevant only where the defendant could show that the failure was the sole cause of harm to the decedent. *Bailey* involved voluntary manslaughter, which is more akin to second-degree murder than negligent homicide. Indeed, the statutory scheme provides a clear demarcation between second-degree murder and negligent homicide. The latter statute specifically excludes wilful and wanton conduct as a basis for a negligent homicide charge. Accordingly, we conclude that *Bailey* applies to the instant case, and the trial court properly excluded the evidence of the decedent's failure to wear a seat belt.

Defendant also argues that the trial court erred in excluding evidence that Michael Pagel's Jeep was uninsured. However, this issue is not preserved because defendant did not raise it before the trial

court. In any event, Pagel's insurance status is simply irrelevant to any issue in this case.

VII

Defendant claims that the cumulative effect of several errors denied him a fair trial. The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not. *Knapp, supra* at 387-388. Reversal is warranted only if the effect of the errors was so seriously prejudicial that the defendant was denied a fair trial. *Id. at* 388. Here, because we have not found any errors, this issue is without merit.

Affirmed.