*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

KENNETH EDWARD RUSSELL,

Defendant-Appellee.

UNPUBLISHED
September 5, 2019

No. 347429
Lapeer Circuit Court
LC No. 18-013340-FC

Before: BECKERING, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

In this interlocutory appeal, the prosecution appeals by leave granted[1] from an opinion denying the prosecution's motion to amend the felony information. Defendant, Kenneth Edward Russell, was charged with second-degree murder, MCL 750.317, operating while intoxicated ("OWI") causing death, MCL 257.625(4)(a), reckless driving causing death, MCL 257.626(4), and carrying a concealed weapon ("CCW"), MCL 750.227. However, following the preliminary examination, the district court declined to bind defendant over on the charge of second-degree murder, and the circuit court declined to grant the prosecution's motion to amend the information and reinstate the charge. For the reasons stated below, we affirm.

## I. FACTUAL BACKGROUND

This case arises out of a fatal car accident that occurred in Lapeer, Michigan. Defendant was driving east on a street that had a posted speed limit of 25 miles per hour. Defendant was driving approximately 49 miles per hour. A witness who was driving ahead of defendant at the time of the accident testified at the preliminary examination that he was driving along the street when a flatbed truck in front of him slowed down, prompting him to slow down and to look in

---

[1] *People v Kenneth Edward Russell*, unpublished order of the Court of Appeals, entered March 13, 2019 (Docket No. 347429).

his rearview mirror. As he looked in his rearview mirror, he saw "a car slamming on his brakes and turning right and striking a tree." The evidence established that, before hitting the tree, defendant's car struck the victim, a pedestrian on the sidewalk, sweeping her up onto the car's hood and crushing her against the tree, severing her legs and partially disemboweling her. The passenger side of defendant's car struck the tree, causing it to go into a rotation, where it then struck a wood sign, a wood railing for a pedestrian bridge, and a steel guardrail before coming to a stop. Tragically, the victim died before emergency medical services could be called.

Police officer Jason Miner attempted to speak to defendant at the scene of the accident. Defendant, who was 65-years old at the time of the accident, was incoherent and did not appear to know that he was at the scene of an accident. Defendant could not name the location he was driving from when the accident occurred. Defendant was so disoriented that he believed the victim might be his sister, and he did not know whether anyone had been in the car with him. It was unclear to Officer Miner whether defendant's mental confusion was caused by the collision or some other reason. Defendant was removed from his car using the Jaws of Life and taken to the hospital. Officer Miner and Detective Sergeant Craig Gormley spoke to defendant at the hospital, where defendant remained confused but began to make more sense. Defendant remembered stopping at a three-way stop immediately before the accident occurred, but the next thing he recalled was having been in an accident; he did not remember the accident itself or what lead to its occurrence. At the hospital he was able to recall where he had been coming from at the time of the accident. Defendant's blood was tested for the presence of drugs and alcohol. No alcohol was found; however, the test indicated that defendant's blood contained compounds typically found in marijuana, including 14 nanograms of THC per milliliter of blood.

The prosecution charged defendant with second-degree murder, MCL 750.317, operating while intoxicated ("OWI") causing death, MCL 257.625(4)(a), reckless driving causing death, MCL 257.626(4), and carrying a concealed weapon ("CCW"), MCL 750.227. Following preliminary examination, the district court bound defendant over on all charges except for second-degree murder. The prosecution filed a motion in the circuit court seeking to amend the information to reinstate the second-degree murder charge, but the circuit court ruled that the district court did not misinterpret the legal standard for second degree murder or abuse its discretion in declining to bind defendant over on the second-degree murder charge.

## II. MALICE – LEGAL STANDARD

The prosecution argued in the circuit court and maintains before this Court that the district court abused its discretion by using an incorrect legal standard in determining whether the prosecution showed that defendant acted with malice with respect to the second degree murder charge. We disagree.

"A district court's decision to bind a defendant over for trial will not be disturbed absent an abuse of discretion." *People v Green*, 260 Mich App 710, 713; 680 NW2d 477 (2004). "A district court abuses its discretion if its decision 'falls outside the range of principled outcomes.'" *People v Shami*, 501 Mich 243, 251; 912 NW2d 526 (2018) (quotation marks and citation omitted). This Court reviews de novo the circuit court's decision concerning the question whether the district court abused its discretion in deciding whether to bind a defendant over for

trial.  *People v Norwood*, 303 Mich App 466, 468; 843 NW2d 775 (2013).  We review questions of law de novo.  *People v Armisted*, 295 Mich App 32, 37; 811 NW2d 47 (2011).

The district court declined to bind over defendant on a charge of second-degree murder. The elements of second-degree murder are as follows:

> (1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death.  [*People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007).]

It is undisputed that a death caused by an act of the defendant occurred.  At issue is whether the prosecution presented sufficient evidence at the preliminary examination to establish probable malice.  "Malice is defined as 'the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.' "  *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002) (citation omitted).

The prosecution argues that, rather than adhering to the "willful and wanton" standard to establish malice, the district court committed an abuse of discretion by holding the prosecution to a higher standard than that required by law.  In support of this contention, the prosecution directs this Court to the following portion of the district court's comments regarding whether bindover on the second-degree murder charge was appropriate:

> [T]he situation with respect to homicide, 2nd degree murder, is that there be something in addition to [the] willful and [] wanton requirement.  And this was not a fleeing and eluding situation.  This was not something that shocks the conscience, other than the THC, which is why we do have laws that charge people with operating while intoxicated causing death, reckless driving causing death.
>
> And I'm going to respectfully not bind over on the 2nd degree murder.  I don't think that it comes to that level at this point in time.  You can always -- if there's something more that comes up, gentleman, you can bring it back to me.

We agree with the circuit court that, viewed in context, and although inelegantly stated, the district court was attempting to explain the existing state of the law that, in cases where an intoxicated driver causes a death, the prosecution must show that the defendant's actions were uniquely egregious by demonstrating that the defendant engaged in "a level of misconduct that goes beyond that of drunk [or intoxicated] driving." *People v Goecke*, 457 Mich 442, 469; 579 NW2d 868 (1998).[2]  The district court's use of phrases such as "fleeing and eluding," and

---

[2] *Goecke* will be discussed later in this opinion.  Of note with respect to drunk driving and a second-degree murder charge, the Supreme Court noted in *Goecke* the following:

"shocks the conscience," appear to be legal colloquialisms used to express the district court's understanding that the prosecution was required to show that "malice requires egregious circumstances" in cases involving drunk or intoxicated driving. *Id*. at 467. There is no evidence that the district court actually applied an incorrect legal standard in determining whether defendant should be bound over on the second-degree murder charge. Accordingly, the prosecution's first argument lacks merit.

III. BINDOVER

The prosecution next argues that the district court abused its discretion by finding that the prosecution failed to present sufficient evidence to support a decision to bind defendant over on the second-degree murder charge. We disagree.

Generally, "[t]he purpose of a preliminary examination is to determine whether there is probable cause to believe that a crime was committed and whether there is probable cause to believe that the defendant committed it." *People v Perkins*, 468 Mich 448, 452; 662 NW2d 727 (2003). The prosecution is not required to prove beyond a reasonable doubt that the defendant committed a crime; rather, the prosecution "need present only enough evidence on each element of the charged offense to lead a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of [the defendant's] guilt." *Id*. (quotation marks and citations omitted). Therefore, charges may not be dismissed "merely because the prosecutor has failed to convince the reviewing tribunal that it would convict." *Id*. The question whether a defendant is guilty beyond a reasonable doubt must always be reserved for the trier of fact. *Id*.

The prosecution contends that the district court failed to follow the framework regarding malice set forth in *Werner*, 254 Mich App at 531. In *Werner*, this Court defined malice as follows:

That the OUIL, causing death, statute does not limit the ability of the prosecution to charge an intoxicated driver with common-law offenses such as murder does not eliminate the people's burden of proving beyond a reasonable doubt that the defendant engaged in wanton misconduct. More important, for purposes of avoiding the temptation to overcharge, it does not dilute the prosecutor's responsibility to be mindful that "[t]he preliminary examination should identify not simply those who are probably guilty but more precisely those who are probably convictable. The dissent contends that by finding sufficient evidence to support a bindover and the convictions today we adopt the position that drunk driving alone is sufficient to establish probable cause of malice. We disagree. The cases before us today involve a level of misconduct that goes beyond that of drunk driving [*Goecke*, 457 Mich at 468-469 (quotation marks and citations omitted).]

-4-

> Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. Malice may be inferred from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm. The prosecution is not required to prove that the defendant actually intended to harm or kill. Instead, the prosecution must prove the intent to do an act that is in obvious disregard of life-endangering consequences. [*Werner*, 254 Mich App at 531.]

At issue is whether the prosecution presented sufficient evidence of the third type of malice, i.e., of defendant's "intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is the cause of death or great bodily harm." *Id*. In order for a defendant's actions to rise to the level sufficient to satisfy this definition of malice, the defendant must do more than merely drive while intoxicated, as "not every intoxicated driving case resulting in a fatality constitutes second-degree murder." *Id*. at 533 The prosecution must prove that the defendant's actions "disclosed 'a level of misconduct that goes beyond that of drunk driving.' " *Id*. (citation omitted).

The Michigan Supreme Court addressed this very issue in *People v Goecke*, 457 Mich 442 (1998), which consolidated three cases involving drunk driving, traffic violations, collisions, and fatalities. The first of the consolidated cases, *People v Goecke*, involved the question of what level of conduct beyond that of driving while intoxicated provides evidence of malice sufficient to bind a defendant over on a charge of second-degree murder. The defendant in *Goecke* had a blood-alcohol level of .17 when he sped through a red light at approximately 70 to 80 miles per hour and struck another car, killing the driver. *Goecke*, 457 Mich at 449. The prosecution presented evidence that, prior to the accident, defendant consumed between seven and nine beers while he and a friend sat in defendant's vehicle in the parking lot of a liquor store. When a police cruiser drove into the parking lot, defendant and his friend drove out, looking for another place to drink while drinking along the way. *Id*. at 448-449. After consuming even more alcohol, defendant drove at high speeds along a main artery in Pontiac, nearly striking a witness's van. *Id*. at 449. Even after this near miss, the defendant continued to drive, eventually speeding through a red light before crashing into the victim's car. *Id*. After the crash, witnesses heard the defendant say that he knew he should not have been driving, that he was too drunk and was driving too fast. *Id*. at 470.

The Supreme Court reasoned that the defendant's pre-accident conduct of evading the police by leaving the parking lot of the liquor store permitted the reasonable inference that the defendant was aware that his level of intoxication was too great to drive. *Id*. at 470. The Court further reasoned that the defendant was "aware of the extent of his impairment and lack of control after [he] narrowly missed hitting another vehicle . . . ." *Id*. Disregarding these warnings, defendant continued to drive, with a fatal result. The Supreme Court found in these facts sufficient evidence of probable malice to support a bindover on a charge of second-degree murder." *Id*. at 471.

The two cases consolidated with *Goecke*, *People v Baker* and *People v Hoskinson*, addressed whether the prosecution had presented evidence sufficient to support the respective

defendants' convictions for second-degree murder. We understand that the evidence required to prove malice beyond a reasonable doubt at trial differs from that necessary to support a finding of probable malice at a preliminary examination. See *Perkins*, 468 Mich at 452. We briefly discuss *Baker* and *Hoskinson* merely to illustrate the type of evidence presented in cases such as the one at bar, and because the prosecution argues on appeal in the instant case that the facts here are "remarkably similar" to those our Supreme Court found to support a conviction for second-degree murder in *Baker*.

In *Baker*, the jury convicted the defendant of two counts of second-degree murder for driving drunk and speeding at approximately 60 to 70 miles per hour through a 35-mile-per-hour speed zone before colliding with another car and killing both its occupants. *Id*. at 451-452. The prosecution presented evidence that the defendant lived about a mile from the site of the accident, that other cars had been going across the intersection at the traffic light the defendant ran before striking the victims' car, and that he struck the victims' car with extreme force. *Id*. at 471. Our Supreme Court concluded that one might reasonably infer from these facts that the defendant was aware of the intersection and the traffic light, that he probably was driving faster than approximated, and that as he approached the intersection, he likely could have seen the other cars going through it across his path of travel. *Id*. Furthermore, the Court noted that the defendant narrowly missed hitting two other cars before he hit the victims' car, yet he kept driving. Failing to heed any of these circumstances and warnings, Baker "placed himself in a position, the results of which a reasonable person would know had the natural tendency to cause death or great bodily harm." *Id*. at 472. Although both *Baker* and the case at bar involve high-speed driving and forceful collisions, as will be discussed more thoroughly below, the prosecution in the case at bar identified no circumstances from which to infer probable malice.

In *Hoskinson*, our Supreme Court likewise concluded that the prosecution presented evidence from which the jury could reasonably infer that the defendant had acted with malice. Hoskinson drank, and drove through a residential neighborhood at varying speeds between 40 and 60 miles per hour. *Id*. Hoskinson swerved to avoid an oncoming vehicle and lost control of his car. *Id*. at 454. His car jumped over the curb and struck a four-year-old girl who was riding her tricycle on the sidewalk. *Id*. Hoskinson's vehicle dragged the girl's body across two residential lawns before he was able to regain control of the car. *Id*. The prosecution presented evidence showing that, prior to the accident, Hoskinson had staggered from the bar at which he had been drinking, and backed into the same parked car twice as he was attempting to leave the bar's parking lot. In addition, he was familiar with the residential neighborhood through which he had driven, and was aware that it had speed dips at almost every intersection. He had swerved to avoid hitting a car at a stop sign, which he then ran, and swerved again to avoid hitting an oncoming car. In addition, the passengers in his car told him that he was driving too fast and should slow down. All of this happened before the fatal accident and, according to the Supreme Court's reasoning, should have put Hoskinson on notice that he should not be driving. Disregarding these circumstances, the defendant continued to drive. *Id*. at 471-472. The Supreme Court held that, viewed in the light most favorable to the prosecution, this evidence was sufficient to support the jury's conviction of Hoskinson of second-degree murder. *Id*. at 472.

In *Werner*, this Court relied on *Goecke* to determine whether a trial court erred in denying the defendant's motion for a directed verdict on a charge of second-degree murder. The

evidence showed that the defendant had driven his truck on the wrong side of the road while intoxicated and collided head-on with another vehicle, killing a passenger and seriously injuring the driver. *Werner*, 254 Mich App at 530. Unlike in *Goecke*, *Baker*, and *Hoskinson*, the prosecution did not present evidence of the *Werner* defendant's behavior immediately prior to the accident. *Id*. at 533-534. However, the prosecution did present evidence of a prior recent instance in which the defendant experienced an alcohol-induced blackout while driving and crashed his vehicle. *Id*. at 533. From this, the Court reasoned as followed:

> This is not a case where a defendant merely undertook the risk of driving after drinking. Defendant knew, from a recent prior incident, that his drinking did more than simply impair his judgment and reflexes. He knew that he might actually become so overwhelmed by the effects of alcohol that he would completely lose track of what he was doing with his vehicle. If defendant knew that drinking before driving could cause him to crash on boulders in front of a house, without any knowledge of where he was or what he was doing, he knew that another drunken driving episode could cause him to make another major mistake, one that would have tragic consequences. [*Id*.]

In all of the aforementioned cases, the prosecution presented evidence of pre-accident behavior that put the defendants on notice, or should have put them on notice, that they should not have been driving and that the likely result of their driving or continuing to drive would be death or great bodily harm. In each case, the defendant ignored the circumstances and warnings and continued to drive, with tragic results. By contrast, the prosecution in the case at bar presented no evidence of circumstances from which a factfinder could reasonably infer that defendant willfully and wantonly disregarded the likelihood that his actions would result in death or great bodily harm. As defendant notes, there was no proof admitted at the preliminary examination that defendant had any prior incidents of impaired driving or that he had any difficulties driving on the day of the incident preceding the accident at issue. The prosecution stresses the speed at which defendant was traveling, defendant's loss of control of his vehicle during the crash, the force of the crash, and the severity of the victim's injuries.[3] However, as our Supreme Courts' analysis of the consolidated cases in *Goecke* and this Court's analysis in *Werner* illustrates, speed and the horrific results of a crash, alone, are insufficient "to lead a person of ordinary prudence and caution to conscientiously entertain a reasonable belief" that defendant acted with probable malice. If they were, then every defendant in a drunk driving case involving speeding and fatal results would be subject to a charge of second-degree murder. See *Werner*, 254 Mich App at 533 (recognizing that "not every intoxicated driving case resulting in a fatality constitutes second-degree murder"). Stated differently, although this case entails a

---

[3] Contrary to the prosecution's contention, the fact that defendant's cell phone was located on the floor board of the driver's side of the vehicle after the crash, without more, does not lead to the "obvious inference" that he was using his phone while driving. No cell phone records were admitted establishing use. In light of the car's sudden and violent movements, and in the absence of cell phone records establishing use of the phone before the crash, inferring that defendant's use of the phone from its post-crash position in the car is mere speculation.

gruesome, tragic, and avoidable death at the hands of defendant, we cannot conclude from the facts presented at the preliminary examination that the district court abused its discretion in finding insufficient evidence of egregious circumstances that would distinguish this case from other cases of operating while intoxicated causing death. See *Goecke*, 457 Mich at 469.

Affirmed.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Thomas C. Cameron