*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

UNPUBLISHED
May 2, 2024

v

ROBERT GEORGE ALBERT,

        Defendant-Appellee.

No. 367466
Livingston Circuit Court
LC No. 23-027877-FC

Before: M. J. KELLY, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Following a fatal car accident, defendant was charged with second-degree murder, MCL 750.317, operating a motor vehicle while intoxicated causing death, MCL 257.625(4)(a), and operating a motor vehicle while intoxicated causing serious injury, MCL 257.625(5), and was bound over for trial by the district court. Defendant moved to quash and dismiss the second-degree murder charge, which the circuit court granted. We granted the People's interlocutory appeal[1] to review the circuit court's order granting defendant's motion to quash, and now reverse and remand for proceedings consistent with this opinion.

## I. BACKGROUND

Decedent was driving her Camaro, with her husband as a passenger, when she was killed in a car accident in a primarily residential area at the intersection of Denton Creek Drive and Denton Hill Road. According to decedent's husband, before pulling out onto Denton Hill Road, both he and decedent looked for oncoming traffic and saw no cars approaching. Decedent then initiated a turn from Denton Creek Drive north onto Denton Hill Road, on which the speed limit was 45 miles per hour. Once she began the turn and was traveling across the southbound lane, she and her husband both saw defendant's Silverado pickup truck quickly approaching in the southbound lane. Decedent's husband testified that decedent accelerated and successfully entered

---

[1] *People v Albert*, unpublished order of the Court of Appeals, entered December 20, 2023 (Docket No. 367466).

the northbound lane. However, instead of continuing in the southbound lane, defendant's truck swerved into the northbound lane and collided with decedent's vehicle. Decedent was pronounced dead at the scene.

A responding Livingston County Sheriff's deputy testified that decedent's vehicle had extensive driver's side damage and the truck had extensive damage to its front end. The deputy observed multiple beer cans around the truck, some of which appeared to be open. The deputy spoke to defendant, who reported that he had been driving about 53 miles per hour before the accident and that the decedent's vehicle pulled out in front of him before he had time to stop. The deputy smelled alcohol on defendant, and defendant admitted that he had "half a beer" before driving. The deputy then administered several field sobriety tests to defendant, all of which indicated that defendant was intoxicated. Later, after consenting to a blood draw, defendant's blood tested positive for 0.138 grams alcohol per 100 milliliters of blood and for THC.

An accident reconstructionist from the sheriff's office also visited the accident scene and saw a partially full pint of whiskey on the ground near the driver's side door of the truck and five empty cans of high alcohol beer in defendant's truck. The accident reconstructionist determined that, based on the tire marks and gouges on the road, the accident occurred in the northbound lane of Denton Hill Road. The accident reconstructionist did not find any evidence of pre-impact braking. Based on the truck's airbag control module, the accident reconstructionist determined that defendant was traveling at least 73 miles per hour at the time of the accident, but was likely driving 83 miles per hour because the defendant's tires were oversized, which was not considered in the initial modeling. The accident reconstructionist also determined that defendant was accelerating with 100% of his throttle until one second before the crash, when he finally began to apply his brakes. The following exchange occurred during the preliminary exam between the prosecution and the accident reconstructionist regarding the collision:

> *Q*. So, then, what we know based on the data obtained from the [airbag control module] and your investigation, is that at that three second mark that the victim vehicle enters the intersection, the Silverado is too far away for the victim to have viewed it or seen it?
>
> *A*. Correct.
>
> *Q*. And, also far enough away that the Defendant had he made the observation in time, could have stopped his vehicle in time to avoid that collision?
>
> *A*. Yes.
>
> *Q*. When the victim entered the intersection at that three second mark, and the Defendant's vehicle is obviously coming at it, is there any sort of a base of action that that Camaro would have been able to complete to avoid collision?
>
> *A*. Nothing more than what she did, hit the gas.
>
> *Q*. So, she floored the gas, got into the northbound lane of travel, is that correct?

*A.* Yes.

*Q.* Do you believe that had the Defendant's vehicle not swerved into the northbound lane that the collision have been prevented?

*A.* I believe it could have been avoided.

According to the accident reconstructionist, defendant lived on Denton Hill Road, approximately three tenths of a mile south of where the collision occurred.

## II. PROCEDURAL HISTORY

At the preliminary examination, the prosecutor argued that an intoxicated driver who causes the death of another individual may be convicted of second-degree murder when the "level of misconduct goes beyond that of drunk driving." The district court found:

> Defendant was operating his vehicle in a 45 mile per hour zone, it was a . . . large Chevy Silverado with excessively large tires for the vehicle. In addition, he was travelling by [the accident reconstructionist]'s estimates, 83 miles per hour. The actual data prior to the calculation by [the accident reconstructionist] was 73 miles per hour. Regardless, those are both in excess of the speed limit of 45 miles per hour on Denton Hill Road that day . . . .
>
> In addition, there were half empty liquor bottles, there were beer cans with high alcohol level beer laying around the scene that were empty that had come from the Defendant's truck. The Defendant was, in fact, intoxicated. Over an hour after . . . blood was drawn from him at the hospital . . . he was a .13 alcohol level, and had active THC in his system.
>
> In addition, not only was he traveling in excess of the speed, the collision actually occurred when his vehicle veered into the opposing lane and struck the victim's vehicle.

The district court concluded that the prosecution had established probable cause for every element of the second-degree murder charge, and bound defendant over to the circuit court as charged.

In the circuit court, defendant moved to quash the second-degree murder charge. Defendant contended that although there was evidence that he was intoxicated, there were no extreme circumstances, like running a red light or fleeing from police, to demonstrate malice; further, he had the right of way, and decedent pulled out in front of him, which caused the accident to occur. The prosecution argued that the district court selected a principled outcome when it found probable cause to bind defendant over because there were several factors that indicated that defendant acted with malice, including defendant's speed, defendant's familiarity with the area, the beer cans and whiskey in defendant's car, defendant's failure to brake until one second before the airbags were deployed, and defendant's swerve into the northbound lane.

The circuit court concluded that the district court abused its discretion because its decision fell outside of the range of principled outcomes. According to the circuit court, the evidence

showed only that defendant was intoxicated, that he was speeding, and that he collided with the decedent's car. This evidence, according to the circuit court, did "not satisfy even the low threshold of probable cause to find that Defendant put into motion actions that had a high probability to cause death and that he ignored the natural tendency of those actions to cause death." Therefore, it was an abuse of discretion for the district court to find that there was probable cause that defendant acted with malice when he was speeding on familiar roads while intoxicated. The circuit court also concluded that the accident reconstructionist's opinion that defendant's swerve caused the accident was based on speculation, and that the district court erred by relying on that speculative opinion when it found that there was evidence of probable malice. The circuit court granted defendant's motion to quash, dismissed the second-degree murder charge, and stayed the case.

## III. DISCUSSION

We conclude that the circuit erred when it granted defendant's motion to quash and concluded that the district court abused its discretion in binding over defendant for trial on the second-degree murder charge.

Our review of a circuit court's order on a motion to quash involves multiple levels of review. "In the context of reviewing a district court's bindover decision, the order on appeal is the circuit court's decision denying the motion to quash, which we review de novo (i.e., with no deference) because the dispositive question is whether the district court abused its discretion in binding over defendants." *People v Crumbley*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket Nos. 362210; 362211); slip op at 11. "Thus, although we give no deference to the circuit court's findings in its review of the district court decision, we give a great deal of deference to the *district court's* decision, that is, we review that decision for an abuse of discretion." *Id*. See also *People v Schurr*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365104); slip op at 8. "[T]his Court reviews the circuit court's decision regarding the motion to quash a bindover only to the extent that it is consistent with the district court's exercise of discretion. The circuit court may only affirm a proper exercise of discretion and reverse an abuse of that discretion." *Id*. at 9 (quotation marks and citation omitted). "The standard for reviewing a decision for an abuse of discretion is narrow; the result must have been so violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or an exercise of passion or bias." *Id*. at 8 (quotation marks and citations omitted). See also *People v Murawski*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365852); slip op at 3; *People v Hawkins*, 340 Mich App 155, 173; 985 NW2d 853 (2022). "[A] trial court necessarily abuses its discretion when it makes an error of law." *Id*. (quotation marks and citation omitted).

After a district court hears all the evidence at a preliminary examination, the district court must decide whether to discharge the defendant, reduce the charge, or bind the defendant over to appear before the circuit court. MCL 766.13. At the preliminary examination, "[t]he prosecution bears the burden to present evidence establishing probable cause to believe that a felony was committed by a person and probable cause to believe that the defendant was that person." *Schurr*, ___ Mich App at ___; slip op at 11. To bind a defendant over for trial, the district court "must find probable cause that the defendant committed a felony based on there being evidence of each element of the crime charged or evidence from which the elements may be inferred." *Crumbley*, ___ Mich App at ___; slip op at 12 (quotation marks and citation omitted). Probable cause exists

if there is "enough evidence to cause a person of ordinary caution and prudence to conscientiously entertain a reasonable belief of the defendant's guilt." *Id*. (quotation marks and citations omitted). "The probable-cause standard of proof is less rigorous than the guilt-beyond-a-reasonable-doubt standard of proof." *Schurr*, ___ Mich App at ___; slip op at 11.

"The elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Gafken*, 510 Mich 503, 511; 990 NW2d 826 (2022), quoting *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998) (quotation marks omitted). Malice may be established "by showing (1) the intent to kill, (2) the intent to cause great bodily harm, or (3) the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*. The third basis for proving malice may also be shown by evidence of "the intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result." *Id*. (quotation marks and citation omitted). In other words, malice may be proven by establishing that the defendant intended "to do an act that is in obvious disregard of life-endangering consequences." *People v Bailey*, 330 Mich App 41, 49; 944 NW2d 370 (2019) (quotation marks and citation omitted). "Malice may be inferred from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *Id*. at 48 (quotation marks and citation omitted).

Although not every drunk-driving case "that result[s] in death should proceed to trial on charges of second-degree murder," when a case "involve[s] a level of misconduct that goes beyond that of drunk driving," i.e., some type of egregious circumstances, there may be sufficient evidence to support a bindover on a charge of second-degree murder. *Goecke*, 457 Mich at 467, 469. See also *People v Werner*, 254 Mich App 528, 533; 659 NW2d 688 (2002). A malice finding does not necessarily require the prosecution to present evidence of pre-accident conduct when there is sufficient evidence that a defendant knew the potential consequence of their drunk driving. *Werner*, 254 Mich App at 532-533.

In the two cases consolidated with *Goecke*, *People v Baker* and *People v Hoskinson*, the Court also addressed whether the prosecution had presented sufficient evidence to support the defendants' convictions of second-degree murder in the context of drunk driving. *Goecke*, 457 Mich at 471. Although the evidence required to prove malice beyond a reasonable doubt differs from the evidence necessary to support a finding of probable malice at a preliminary examination, these cases help illustrate what other evidence may be indicative of malice in drunk driving cases. See *Schurr*, ___ Mich App at ___; slip op at 11.

In *Baker*, the Court held that there was sufficient evidence for a reasonable jury to infer malice when the defendant was traveling between 60 and 70 miles per hour in a 35-miles-per-hour zone and failed to stop at a red light, which caused a collision in which the victims died. *Goecke*, 457 Mich at 451. The Court noted that

> [t]estimony established that the defendant lived within one mile of the scene of the accident, had a blood-alcohol content of 0.18 percent, drove well in excess of the speed limit, ran a red stoplight, drove through an intersection at a time when he could have seen at least three vehicles properly traveling through the intersection,

narrowly missed hitting two cars before hitting the victims' car, and killed two people. [*Goecke*, 457 Mich at 471.]

In *Hoskinson*, the Court also held that there was sufficient evidence for a reasonable jury to infer malice when the defendant was "highly intoxicated when he left [a] bar" and backed into the same vehicle twice when he was leaving, which supported an inference that defendant was on notice that he should not have been driving. *Id*. at 472. Further,

> defendant drove at a high rate of speed through a residential subdivision. Having driven through this area before, defendant was aware of the speed dips in the road. He swerved to avoid hitting a car stopped at a stop sign, ran through the stop sign, and nearly hit a car driving in the opposite direction. The occupants of defendant's car advised him that he was driving too fast and that he should slow down.

> After colliding with a vehicle parked at the side of the road, defendant traveled across the eastbound lane, over a curb, across some grass, and struck the victim. Defendant continued to drive along the grass and sidewalk until he finally reentered the street several hundred yards from the point of impact. Despite the fact that defendant's passengers jumped from the moving vehicle after informing the defendant that he had hit a child, the defendant proceeded to drive another several blocks before coming to a stop. [*Id*.]

We conclude that the district court did not abuse its discretion when it determined that there was sufficient evidence of defendant's probable malice to support a bindover on the second-degree murder charge. We make this conclusion in large part because of the similarity of the facts to those at issue in *Baker*, where the Court held that evidence of a defendant's intoxication, his familiarity with an area, his speed in excess of the speed limit, and his inability to follow traffic controls were sufficient for a reasonable jury to infer malice. See *Goecke*, 457 Mich at 471. Here, the prosecution presented evidence that defendant was intoxicated while driving, and that defendant exceeded the speed limit in a residential area near defendant's home by anywhere from nearly 30 to 40 miles per hour. The prosecution also submitted evidence that defendant not only failed to brake, but was accelerating with 100% of his throttle until one second before the crash. Further, several open alcoholic beverages were found in defendant's truck, which could support an inference that defendant was actively consuming alcohol while he was driving. Finally, there was evidence that defendant swerved into decedent's lane, which caused the accident to occur. The district court did not abuse its discretion when it determined that this evidence was enough to support a finding that defendant's conduct exceeded mere drunk driving and constituted probable malice. See *Goecke*, 457 Mich at 469.[2]

---

[2] We appreciate the dissenting views of our esteemed colleague, but simply note in response that we are not relying exclusively on defendant swerving into the other lane as evidence of exceptional circumstances making this case appropriate for a second-degree murder charge. Instead, as in *Baker*, we also rely on the very excessive speed of defendant's vehicle, his familiarity with the limited sight distance area of the collision, as well as his attempt to apply the brakes only one

Further, contrary to the circuit court's opinion, it was not speculation for the accident reconstructionist to opine that, if defendant did not swerve into the northbound lane, the accident would not have occurred.[3] Indeed, evidence presented at the preliminary examination provided a factual basis for the expert's opinion. The accident reconstructionist was qualified as an expert, and was permitted to testify in the form of an opinion or otherwise if: "(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." MRE 702. Decedent's husband testified that they had safely entered the northbound lane before defendant swerved into their lane. The accident reconstructionist testified that the tire marks and gouges on the road indicated that impact occurred in the northbound lane. The accident reconstructionist's opinion that, but for defendant's swerve, the accident would not have occurred was not based on speculation but based on this evidence. The district court did not err by finding that defendant's swerve in part supported a finding of probable malice.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Christopher M. Murray

---

second before impact. And, we note that there is no evidence to establish defendant swerved to avoid the crash, or because he was reaching for the bottles and cans on the car floor, or for some other reason.

[3] Defendant asserts that his swerve into the northbound lane was a reaction to decedent pulling out in front of him, and that it was a normal reaction based on a driver's inclination to pass on the left. However, no evidence was presented at the preliminary examination to support this proposition.