*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RICKY RYNELL THOMAS,

Defendant-Appellant.

UNPUBLISHED
November 26, 2019

No. 343884
Ingham Circuit Court
LC No. 17-000193-FC

Before: O'BRIEN, P.J., and GADOLA and REDFORD, JJ.

PER CURIAM.

Following a trial, a jury convicted defendant of second-degree murder, MCL 750.317, and resisting or obstructing a police officer, MCL 750.81d(1). The trial court sentenced him to 330 to 720 months for second-degree murder, and to 474 days served in prison for resisting or obstructing. On appeal, defendant argues that the trial court erred by declining his requests for two jury instructions, and contends that insufficient evidence supported his convictions, or alternatively, that the verdict was against the great weight of the evidence. We disagree, and affirm.

## I. FACTS

The victim, Lorenza McKinney, resided at the Capitol Commons apartment complex in Lansing. Between 1:30 and 3:00 p.m. on January 6, 2017, another resident who lived in the apartment below the victim's heard repeated "loud, banging" sounds coming from the victim's apartment. The neighbor called the police to complain about the noise which then stopped for a while but resumed at around 10:00 p.m., prompting him to again call the police. Two police officers responded and went to the victim's apartment to check on the occupants at about 10:15 p.m. Defendant answered the door but would not come out or let the officers inside.

Behind defendant, the officers saw a man, later identified as the victim, lying unconscious on the living room floor. The officers asked defendant to leave the apartment so that they could check on the victim's welfare, but he refused. When an officer tried to physically remove defendant from the doorway, a scuffle ensued during which defendant reached toward the officer's face which prompted him to strike defendant in the face. The other officer twice

-1-

deployed his Taser without effect. Additional officers arrived and eventually subdued defendant and took him into custody. The officers unsuccessfully performed cardiopulmonary resuscitation on the victim who was pronounced dead about one hour after the police arrived at his apartment.

## II. INSTRUCTIONAL ERROR

### A. STANDARD OF REVIEW

We review de novo questions of law arising from the provision of jury instructions. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). We review for an abuse of discretion a trial court's determination whether a jury instruction is applicable to the facts of a case. *Id*. "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). "The defendant bears the burden of establishing that the asserted instructional error resulted in a miscarriage of justice." *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). We also review de novo issues of statutory construction, which involve questions of law. *People v Ryan*, 295 Mich App 388, 400; 819 NW2d 55 (2012).

### B. ANALYSIS

Defendant claims that the trial court erred by declining his requests that the jury be given a voluntary manslaughter instruction, M Crim JI 16.9, and that it be instructed to consider whether defendant's act caused the victim's death, M Crim JI 16.15. We disagree.

M Crim JI 16.9 provides:

(1) The crime of murder may be reduced to voluntary manslaughter if the defendant acted out of passion or anger brought about by adequate cause and before the defendant had a reasonable time to calm down. For manslaughter, the following two things must be present:

(2) First, when the defendant acted, [his] thinking must be disturbed by emotional excitement to the point that a reasonable person might have acted on impulse, without thinking twice, from passion instead of judgment. This emotional excitement must have been the result of something that would cause a reasonable person to act rashly or on impulse. The law does not say what things are enough to do this. That is for you to decide.

(3) Second, the killing itself must result from this emotional excitement. The defendant must have acted before a reasonable time had passed to calm down and return to reason. The law does not say how much time is needed. That is for you to decide. The test is whether a reasonable time passed under the circumstances of this case.

Manslaughter is a lesser included offense of murder. *People v Mendoza*, 468 Mich 527, 544; 664 NW2d 685 (2003). "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it."

-2-

*People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002). Defendant argues that the evidence established both elements of manslaughter: that his thinking was disturbed by emotional excitement; and the killing resulted from this excitement before he had an opportunity to calm down. In support of this argument, he cites the police officers' testimony that he appeared to be intoxicated when they arrived and medical evidence that the victim had a blood alcohol content (BAC) of .365 at the time of the victim's autopsy.

Defendant does not cite any evidence that his intoxication caused him to become emotionally excited to the point that he acted on impulse, without thinking twice, from passion instead of judgment. Although the police officers testified that defendant appeared to be intoxicated, no medical evidence was offered regarding his blood alcohol level at the time the police took him into custody. Moreover, voluntary drunkenness may not be considered "provocation" for purposes of satisfying the elements of voluntary manslaughter. *People v Langworthy*, 416 Mich 630, 652; 331 NW2d 171 (1982). Defendant has not explained why the victim's BAC would have contributed to his own emotional excitement, nor does he cite any evidence that intoxication caused him to become emotionally excited to the point that he acted on impulse or passion or that his thinking was disturbed.

Defendant cites the testimony of one of the victim's neighbors regarding the victim's anger with defendant a few weeks before the incident. Defendant contends that such evidence supported his argument that the two men may have fought on the date of the incident. Such evidence, however, does not establish that, at the time of the incident, defendant experienced disturbed emotional excitement to the point that he lacked the ability to act rationally and killed the victim on impulse or because of passion. That the victim expressed anger toward defendant at an earlier date cannot establish defendant's state of mind at the time of the incident.

Defendant also argues that evidence established the element of provocation because he asserts he and the victim had been fighting with each other on the day of the incident. The record, however, reflects that the police officers who responded to the victim's apartment testified that defendant had no visible injuries when they made contact with him. Further, following his arrest, because police deployed a Taser, defendant was transported to a hospital pursuant to police protocol and another officer made contact with him there. That officer testified that defendant's injuries included a "very small abrasion" on the knuckle of his right ring finger and swelling above one eye. That evidence did not establish that the victim caused them during a fight. Rather, the evidence suggested that defendant's face became injured when he was punched in the face while struggling with the arresting officers. By contrast, the victim's injuries were severe and ultimately fatal, belying the idea that the two had been engaged in a "fight." The trial court did not err by concluding that the evidence failed to establish that defendant acted on impulse, without thinking twice, from passion instead of judgment.

Moreover, the evidence also does not support defendant's assertion that the killing resulted from his emotional excitement and that he "acted before a reasonable time had passed to calm down and return to reason." M Crim JI 16.9(3). As noted, the evidence presented established that loud, banging noises began coming from the victim's apartment at around 1:30 to 3:00 p.m., ceased, and then resumed seven hours later at around 10:00 p.m. and continued until the police arrived about 15 minutes later. Further, when the police officers arrived at around 10:15 p.m., the victim appeared to be unconscious rather than deceased; he was not cold

to the touch or stiff, which suggests that either he was not yet dead or that he had not been deceased for very long. The trial court could reasonably conclude from this evidence that, although defendant earlier in the afternoon may have experienced a state of emotional excitement, he had several hours to calm down and did so before killing the victim. A rational view of the evidence does not support a finding that defendant acted on impulse, without thinking twice, from passion instead of judgment when he killed the victim. Accordingly, the trial court did not abuse its discretion by declining to instruct the jury on voluntary manslaughter.

Defendant also argues that the trial court erred by not instructing the jury to consider whether defendant caused the victim's death as provided in M Crim JI 16.15. Defendant asserts that the fact that the victim's BAC measured .365 at the time of the autopsy sufficed to include M Crim JI 16.15 in the jury instructions. M Crim JI 16.15 provides as follows:

> [There may be more than one cause of death.] It is not enough that the defendant's act made it possible for the death to occur. In order to find that the death of [*name deceased*] was caused by the defendant, you must find beyond a reasonable doubt that the death was the natural or necessary result of the defendant's act.

According to defendant, the medical evidence showed that this level of alcohol would kill a man of similar weight and height to the victim, calling into question whether defendant's actions caused the victim's death. Additionally, defendant asserts that, although the forensic pathologist testified that the cause of death was multiple blunt force trauma, the evidence did not necessarily support this testimony. We disagree because the evidence failed to support this instruction.

The record reflects that the medical examiner testified that multiple blunt force trauma caused the victim's death and that no other factors caused his death, including alcohol or the victim's preexisting conditions of heart disease and cirrhosis of the liver. The medical examiner further testified that while it was possible that the victim's cirrhosis hastened his death by causing him to bleed internally faster than someone with a normal liver, he emphasized that the victim's injuries would have also been fatal in a person who did not suffer from cirrhosis. Respecting the victim's blood alcohol level, the pathologist agreed that a BAC of .365 could cause the death of someone of the victim's weight and size if he had been a "susceptible person," meaning someone who was not a chronic drinker, unlike the victim. The medical examiner specifically testified that, in his opinion, the victim did not die from alcohol consumption before sustaining his traumatic injuries, because he had "active bleeding" in his abdomen which indicated that his heart remained pumping after he sustained the blunt force injuries. The trial court properly analyzed the record evidence and did not abuse its discretion by concluding that no evidence established that the victim's consumption of alcohol caused his death. Therefore, the trial court did not err by declining to provide the jury the M Crim JI 16.15 instruction.

## III. SUFFICIENCY AND GREAT WEIGHT OF THE EVIDENCE

### A. STANDARDS OF REVIEW

We review de novo a challenge to the sufficiency of evidence in support of a criminal conviction. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When

determining whether the prosecution presented sufficient evidence to support a conviction, this Court reviews the evidence in a light most favorable to the prosecution and determines whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *Id*. "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Id*. In *Bailey*, this Court explained:

> the prosecutor is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince the jury in the face of whatever contradictory evidence the defendant may provide. Further, circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. [*Id*. (quotation marks, alterations, and citations omitted.]

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Anderson*, 322 Mich App 622, 632; 912 NW2d 607 (2018) (quotation marks and citation omitted). "It is the province of the jury to determine questions of fact and assess the credibility of witnesses." *Id*.

## B. ANALYSIS

Circumstantial evidence and reasonable inferences drawn from such evidence can constitute satisfactory proof of the elements of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). We will not resolve witness credibility questions or interfere with the fact-finder's determination of the weight of evidence. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012). Triers of fact, not the appellate court, determine what inferences may be fairly drawn from the evidence and the weight to be accorded them. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). We resolve all evidentiary conflicts in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). The "prosecutor need not negate every reasonable theory consistent with innocence." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

The elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). "Malice is defined as 'the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.' " *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002) (citation omitted). "The prosecution is not required to prove that the defendant actually intended to harm or kill. Instead, the prosecution must prove the intent to do an act that is in obvious disregard of life-endangering consequences." *Id*. (quotation marks and citations omitted). Malice may be inferred from facts in evidence, including the use of a dangerous weapon. *People v Bulls*, 262 Mich App 618, 627; 687 NW2d 159 (2004). "[M]inimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *Kanaan*, 278 Mich App at 622.

Defendant argues that the evidence did not establish "how" the victim suffered blunt force trauma or that defendant acted with malice aforethought or intended to kill or cause great bodily harm to the victim. Thus, he argues, the evidence lacked sufficiency to support his conviction of second-degree murder. As an initial matter, malice, not malice aforethought, is an element of second-degree murder. We disagree with defendant that the evidence did not suffice to support the jury's verdict. Although the evidence was largely circumstantial, a rational jury could properly find that the elements of the offense were proven beyond a reasonable doubt, including malice. *People v Cain*, 238 Mich App 95, 117; 605 NW2d 28 (1999). Moreover, the verdict was not against the great weight of the evidence.

Defendant does not dispute that the first or fourth elements of the offense were established at trial, but challenges the evidence pertaining to cause and malice. Although there were no eyewitnesses to the offense, the circumstantial evidence established these elements beyond a reasonable doubt. "Even in a case relying on circumstantial evidence, the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide." *People v Fletcher*, 260 Mich App 531, 560; 679 NW2d 127 (2004). In this case, the prosecution established that defendant and the victim were alone in the victim's apartment and that the victim was unresponsive when the police arrived. The prosecution also established that the victim's neighbor heard several loud, banging noises coming from the victim's apartment which prompted him to call the police. Because the victim lay unresponsive and the police found only defendant in the apartment when they arrived, the jury could conclude that defendant caused the victim's injuries. Evidence established that the victim died from multiple blunt force trauma. When the police arrived on the scene, they observed blood on defendant's clothing. The fact that the victim and defendant were alone in the apartment before the victim's death supported the jury's conclusion that defendant inflicted the trauma that caused the victim's death.

Further, we find no merit to defendant's argument that the victim could have died from drunkenness and alcohol poisoning which he contends establishes that the prosecution failed to prove he caused the victim's death. The record simply does not support this argument. The medical examiner provided unrebutted testimony that alcohol did not constitute a factor in the victim's death and that the victim died from multiple blunt force trauma. Additionally, the prosecution presented evidence of defendant's shirt and shoes that were found to have the victim's blood on them. The jury could reasonably conclude that defendant inflicted the blunt force trauma that caused the victim's death.

Regarding malice, defendant argues that the evidence did not establish that he intended to kill or cause great bodily harm, or that he acted in wanton and willful disregard of the likelihood that his behavior would cause the victim's death or great bodily harm. The record reflects that the prosecution presented sufficient circumstantial evidence from which a reasonable jury could find that defendant acted with malice when he inflicted the injuries that caused the victim's death. The jury could infer that the banging noises from the victim's apartment correlated with defendant's infliction of blunt force trauma on the victim. The jury could reasonably conclude from the evidence of the repeated and extended violent noises and the condition of the victim at the time of the police arrival and investigation, that defendant acted with malice and intended to cause the victim great bodily harm. The medical examiner testified that the victim's assailant

struck him with sufficient force to cause multiple blunt force trauma, including lacerations of his pancreas and his mesentery, internal injuries that proved fatal. A reasonable jury could conclude from this evidence that the force necessary to inflict these injuries demonstrated that defendant knowingly disregarded the risk that his action would likely cause death or great bodily injury to the victim.

Respecting defendant's argument that the verdict was against the great weight of the evidence, defendant has not cited any contradictory or conflicting testimony that "was so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities." *People v Musser*, 259 Mich App 215, 219; 673 NW2d 800 (2003). Rather, defendant suggests without evidence that the victim could have died from causes other than blunt force trauma, a supposition that evidence specifically refuted at trial by the only witness who testified regarding the victim's cause of death. Therefore, because he has failed to cite any evidence that contradicted the testimony regarding the cause of death or the physical evidence presented at trial, defendant cannot establish that the verdict was against the great weight of the evidence.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Michael F. Gadola
/s/ James Robert Redford