*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 12, 2020

Plaintiff-Appellee,

v

No. 344742
Wayne Circuit Court
LC No. 17-010934-01-FC

MAURICE LAMONT VINSON-JACKSON,

Defendant-Appellant.

Before: STEPHENS, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

A jury convicted defendant of second-degree murder, MCL 750.317,[1] carrying a concealed weapon (CCW), MCL 750.227, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant to concurrent prison terms of 35 to 70 years for the murder conviction and two to five years for the CCW conviction, and a consecutive two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right. We affirm defendant's convictions and the trial court's imposition of court costs, but vacate his sentences and remand for resentencing.

## I. BACKGROUND

Defendant's convictions arise from the fatal shooting of Demarko Randle at a Detroit gas station on the morning of November 1, 2017. The defendant was charged with first-degree murder, MCL 750.316(1)(a), CCW, and felony-firearm. He was bound over as charged on the firearm offenses, but the district court found there was insufficient evidence to bind over on first-degree murder and instead bound defendant over on second-degree murder. The prosecutor sought to reinstate the first-degree murder charge in the circuit court and prevailed. After several other pre-trial motions, a jury trial was held.

---

[1] The jury acquitted defendant of an original charge of first-degree premeditated murder, MCL 750.316(1)(a), and found him guilty of the lesser offense of second-degree murder.

At trial, evidence of a videotape was presented. That video showed that on the morning of November 1, a person approached and shot Randle as he was sitting in his car at a local gas station. None of the four eyewitnesses were able to identify defendant as the shooter because they could not clearly see the shooter's face. Surveillance video captured a man inside the gas station near the time of the shooting. Randle's mother identified the man in the video as defendant. Over objection, the prosecution presented evidence that defendant and Randle were previously involved in an altercation in May 2017, during which Randle fired a gun at defendant and defendant's brother, striking defendant's brother. Evidence was also presented over objection, that cartridge casings recovered from the murder scene were fired from the same gun as a cartridge casing from another shooting in September 2017. Both casings were reported to have come from a nine-millimeter handgun. Defendant admitted firing a nine-millimeter handgun during the September 2017 incident. The jury rejected the defense argument that defendant was not the shooter captured in the November video and that there was no reliable evidence linking him to Randle's murder.

## II. ADMISSION OF EVIDENCE

Defendant first argues that the trial court abused its discretion when it allowed evidence of both the May and September 2017 incidents. Defendant argues that this evidence was inadmissible under MRE 404(b)(1) and MRE 403. We disagree.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019). "The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes." *Id.* at 252 (quotation marks and citation omitted.) "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id.* "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo[.]" *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014).

## A. THE SEPTEMBER 25, 2017 INCIDENT

At trial, the trial court permitted the prosecutor to introduce evidence of a September 25, 2017 shooting incident in which defendant admitted firing a nine-millimeter handgun. The police recovered a nine-millimeter shell casing in that incident. Police also recovered shell casings from the murder scene. Ballistics testing was done on both casings and they were found to have been fired from the same gun. Contrary to what defendant argues, the trial court did not abuse its discretion by admitting this evidence.

The principal issue at trial was the identity of the person who shot Randle. "Evidence of a defendant's possession of a weapon of the kind used in the offense with which he is charged is routinely determined by courts to be direct, relevant evidence of his commission of that offense." *People v Hall*, 433 Mich 573, 580-581; 447 NW2d 580 (1989); see also MRE 401.[2] The evidence that defendant fired a nine-millimeter handgun approximately one month before the charged shooting, and that the nine-millimeter cartridge casing from that shooting and the recovered

---

[2] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

casings from this crime scene were found to have been fired from the same gun was probative of defendant's identity as the shooter.

The prosecutor first noticed its intent to introduce the other acts evidence pretrial under MRE 404(b)(1). "At its essence, MRE 404(b) is a rule of inclusion, allowing relevant other acts evidence as long as it is not being admitted solely to demonstrate criminal propensity." *People v Martzke*, 251 Mich App 282, 289; 651 NW2d 490 (2002); see also *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010) ("the rule is not exclusionary, but is inclusionary"). Although MRE 404(b)(1) prohibits "evidence of other crimes, wrongs, or acts" to prove a defendant's character or propensity to commit the charged crime, it permits such evidence for other purposes, "such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material." *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004) (citation omitted). Other-acts evidence is admissible under MRE 404(b)(1) if it is (1) offered for a proper purpose, i.e., one other than to prove the defendant's character or propensity to commit the crime, (2) relevant to an issue or fact of consequence at trial, MRE 401, and (3) sufficiently probative to outweigh the danger of unfair prejudice, pursuant to MRE 403. *People v Starr*, 457 Mich 490, 496-497; 577 NW2d 673 (1998); *People v VanderVliet*, 444 Mich 52, 55, 63-64, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). In this case, the evidence was not offered for the improper character purpose of demonstrating defendant's propensity to be involved in shootings. Rather, it was offered because it was probative of defendant's identity as the shooter in this case, given that a cartridge casing recovered from the crime scene was found to have been fired from the same gun as a casing recovered in the September shooting incident, in which defendant was a known shooter. Identity is a proper purpose for admissibility under MRE 404(b)(1).

Under MRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403 is not intended to exclude "damaging" evidence, because any relevant evidence will be damaging to some extent. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod on other grounds 450 Mich 1212 (1995). We reject defendant's argument that the evidence of the prior shooting should have been excluded under MRE 403 because it was unfairly prejudicial. Unfair prejudice exists where there is "a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury" or "it would be inequitable to allow the proponent of the evidence to use it." *Id*. at 75-76 (citation omitted). In the second situation, the unfair prejudice language "refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (citation omitted).

In this case, the challenged evidence was relevant to connect defendant to the murder weapon by showing that casings recovered from the crime scene were fired from the same gun as a casing recovered in the September 2017 shooting incident, in which defendant was a known shooter. Because the principal issue at trial was the identification of the shooter, evidence connecting defendant to the murder weapon was highly relevant. The trial court also instructed the jury on the permissible use of the evidence, thereby alleviating any potential for unfair prejudice. It is well established that jurors are presumed to have followed their instructions. *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011). Accordingly, the probative value

of the evidence was not substantially outweighed by the danger of unfair prejudice and the trial court did not abuse its discretion by allowing its admission.

## B. THE MAY 11, 2017 INCIDENT

The trial court also did not abuse its discretion by allowing the prosecutor to introduce evidence of the May 2017 physical altercation between defendant and Randle, which culminated in Randle shooting defendant's brother. The other acts evidence was offered to show motive, a proper purpose under MRE 404(b)(1). "A trial court admits relevant evidence to provide the trier of fact with as much useful information as possible." *Cameron*, 291 Mich App at 612. "If a prior act tends to show why a perpetrator committed a 'seemingly random and inexplicable attack,' then the prior act is relevant for purposes other than the impermissible purpose of showing a defendant has a propensity for violence." *People v Orr*, 275 Mich App 587, 591; 739 NW2d 385 (2007) (citation omitted). In this case, the evidence indicated that Randle was shot on November 1, 2017, while sitting in his car at a gas station. The evidence of the prior altercation was relevant to the prosecutor's theory that defendant was the shooter because it provided context for the jury to understand why defendant would have wanted to shoot Randle in what otherwise appeared to be "a seemingly random and inexplicable attack." *Id*. By supplying a motive for the shooting, the probative value of the other-acts evidence was high.

Although defendant complains that the evidence was unduly prejudicial, we agree with the trial court that the probative value of the evidence was not substantially outweighed by its prejudicial value. We note that the trial court ameliorated any undue prejudice with a cautionary jury instruction concerning the limited, permissible use of the evidence.

## III. AMENDMENT OF THE INFORMATION

Defendant next argues that the trial court erred by granting the prosecutor's request to amend the information to reinstate a charge of first-degree premeditated murder, which the district court had dismissed for insufficient evidence of premeditation, and by denying his motion to quash the information. We disagree.

## A. MOTION TO AMEND THE INFORMATION

"A trial court may permit amendment of the information at any time to correct a variance between the information and the proofs, unless doing so would unfairly surprise or prejudice the defendant." *People v Unger*, 278 Mich App 210, 221; 749 NW2d 272 (2008), citing MCL 767.76 and MCR 6.112(H). Unacceptable prejudice includes unfair surprise, inadequate notice, or inadequate opportunity to defend. *People v Hunt*, 442 Mich 359, 364; 501 NW2d 151 (1993). Defendant does not argue any of the grounds that constitute unacceptable prejudice; he only argues that the amendment was impermissible because the trial court "assumed facts not in evidence— that the shooter on the video was the Defendant." The identity of the shooter would have been an issue under a second-degree murder charge just as it was with the charge of first-degree murder. The amendment did not affect the proffered defense that defendant was not involved in the shooting. In addition, defendant cannot, and has not, argued inadequate notice or unfair surprise. Once the circuit court has jurisdiction, "the only legal obstacle to amending the information to reinstate an erroneously dismissed charge is that amendment would unduly prejudice the defendant

because of 'unfair surprise, inadequate notice, or insufficient opportunity to defend.' " *People v Goecke*, 457 Mich 442, 462; 579 NW2d 868 (1998) (citation omitted). The amendment merely reinstated the original charge of first-degree premeditated murder, which defendant contested at his preliminary examination, and the amendment was allowed a month before trial. Thus, defendant had notice and a sufficient opportunity to defend against that charge. Therefore, the trial court did not abuse its discretion by granting the prosecution's motion to amend.

## B. DEFENDANT'S MOTION TO QUASH

Defendant also is not entitled to appellate relief on his claim that the trial court erred when it denied his motion to quash the information. "If a defendant is fairly convicted at trial, no appeal lies regarding whether the evidence at the preliminary examination was sufficient to warrant a bindover." *People v Wilson*, 469 Mich 1018, 1018; 677 NW2d 29 (2004). See also *People v Bennett*, 290 Mich App 465, 481; 802 NW2d 627 (2010). In this case, defendant's argument fails because he does not contend that insufficient evidence was presented at trial to support his convictions, and there is no indication that he was otherwise prejudiced by the claimed error.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he is entitled to a new trial because of ineffective assistance of counsel. We disagree. Because defendant failed to raise an ineffective-assistance claim in a motion for a new trial or request for an evidentiary hearing in the trial court, our review of this issue is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*.

The effective assistance of counsel is presumed, and the burden is on the defendant to establish the contrary. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002); *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to 'affirmatively entertain the range of possible' reasons that counsel may have had for proceeding as he or she did." *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012) (citation omitted). "[A] reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission." *Id*. at 22-23. Defendant has the burden of establishing the factual predicate of his ineffective-assistance claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

## A. FAILURE TO PRESENT A DEFENSE EXPERT

Defendant argues that trial counsel should have presented a defense expert to counter the prosecution's expert's testimony that a casing found at the crime scene matched a casing found at the September 25, 2017 crime scene. "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). A defense counsel's failure to present a witness can constitute ineffective assistance only where it deprives the defendant of a substantial defense. *Id*. "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (citation omitted).

Defendant has not made an offer of proof regarding the substance of any testimony that a defense expert on ballistics could have offered. There is no evidence that an expert would have supported any defense theory or concluded that the bullet casing from this crime scene did not match the bullet casing from the September 2017 shooting. Defendant's mere speculation that an expert could have provided favorable testimony is insufficient to show that trial counsel's failure to call an expert was objectively unreasonable, or to show that there is a reasonable probability that the outcome of trial would have been different if an expert had been called. *Payne*, 285 Mich App at 190. Defendant has not overcome the strong presumption that trial counsel provided constitutionally effective assistance.

## B. FAILURE TO PRESENT EVIDENCE OF DEFENDANT'S FOOT INJURY

Defendant also faults trial counsel for failing to present "medical records and other evidence" to show that he suffered a foot injury in September 2017, which would have proved that it was impossible for him to have been the person captured on the surveillance video of the crime scene who walked without a visible limp. Decisions regarding what evidence to present are presumed to be matters of trial strategy, and "this Court will not second-guess defense counsel's judgment on matters of trial strategy." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011).

Trial counsel did not present medical records evidence that defendant suffered a foot injury in September 2017. However, evidence of defendant's injury was otherwise presented to the jury. Specifically, an officer testified that she saw defendant in the hospital on September 25, 2017, and "[h]e was shot in his foot." A police sergeant testified that when he encountered defendant on September 25, 2017, defendant was coming out of the hospital, on crutches with his "left foot up to the ankle" bandaged, and he reported that he had been shot in the foot. Trial counsel questioned the police and eyewitnesses regarding whether the shooter in the gas station video was limping at the scene. One officer testified that the person in the video was "[m]aybe, yes" "walking with a limp at the gas station in the video". One eyewitness testified that the shooter was not limping when he fled the scene. Counsel specifically argued that defendant could not have been the shooter because the shooter was not limping. Thus, the jury heard evidence of defendant's foot injury, the apparent limp of the shooter in the gas station video, and that at least one witness did not notice the shooter limping.

Furthermore, defendant has not made an offer of proof in support of his claim that "medical records or other evidence" would have proved, as he contends, that because of his foot injury in September 2017, "he could not have run around like the shooter is seen doing in the videos" in November 2017. In other words, defendant has not provided any "medical records or other

evidence" establishing that he was not physically able to run in the manner that the shooter did as depicted in the surveillance video. Absent such a showing, defendant has not established that he was prejudiced by trial counsel's failure to present further evidence of his foot injury.

## C. FAILURE TO INVESTIGATE RANDLE'S STATUS AS A POLICE INFORMANT

Additionally, defendant faults trial counsel for failing to act on his request to investigate his belief that Randle "was a police informant and that the Detroit police were withholding evidence of this fact from the Defense." "Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *Chapo*, 283 Mich App at 371. "Counsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (citation and quotation marks omitted).

Even assuming that defendant informed trial counsel of his belief, he has not made an offer of proof to support his claim that Randle actually was a police informant. Moreover, defendant does not explain how Randle's status as an informant, if that were true, was relevant to any issue at trial, or how this information could have made a difference in the outcome of the trial. Thus, there is no basis for concluding that trial counsel's failure to investigate this claim was objectively unreasonable.

## V. SCORING OF OFFENSE VARIABLE 6

Defendant argues that the trial court erroneously scored offense variable (OV) 6 of the sentencing guidelines. Plaintiff concedes, and we agree, that OV 6 was erroneously scored and remand for resentencing is necessary. When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

OV 6 is scored for the offender's intent to kill or injure another person, MCL 777.36(1), and 50 points must be scored if, "[t]he offender had [a] premeditated intent to kill[.]" MCL 777.36(1)(a). A score of 25 points is assessed if "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result[.]" MCL 777.36(1)(b). "The sentencing judge shall score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury." MCL 777.36(2)(a).

The jury found defendant not guilty of first-degree premeditated murder, but guilty of the lesser offense of second-degree murder.[3] Thus, it is apparent from the jury's verdict that the jury

---

[3] The elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411

found that the evidence did not support a finding that defendant acted with a premeditated intent to kill, but found that he had "the [unpremeditated] intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002) (citation omitted). There is no indication in the record that the trial court had information that was not presented to the jury. Therefore, as plaintiff concedes, OV 6 should have been scored at 25 points because it corresponds with the intent stated under MCL 777.36(1)(b).

The scoring error entitles defendant to resentencing because it affects his appropriate guidelines range. The additional 25 points for OV 6 increased defendant's total OV score from 80 points to 105 points, which placed him in OV Level III (100+ points) instead of OV Level II (50-99 points) under the applicable sentencing grid for second-degree murder, a class M2 offense. MCL 777.16p; MCL 777.61. A scoring error that affects the appropriate guidelines range entitles a defendant to resentencing. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006); *People v Biddles*, 316 Mich App 148, 156; 896 NW2d 461 (2016). Accordingly, we vacate defendant's sentences and remand for resentencing.

## VI. COURT COSTS

In his last claim, defendant argues that the imposition of court costs under MCL 769.1k(1)(b)(*iii*) constitutes an unconstitutional tax under the Michigan Constitution, because the authorizing statute fails to refer to creating a "tax," rendering it obscure, and because it violates the separation of powers. Defendant did not challenge the constitutionality of MCL 769.1k(1)(b)(*iii*) in the trial court, or otherwise object to the trial court's imposition of court costs. Therefore, this issue is unpreserved. *People v Jackson*, 483 Mich 271, 292 n 18; 769 NW2d 630 (2009). Accordingly, we review this claim for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 762-763; 597 NW2d 130 (1999).

These precise constitutional arguments were previously considered and rejected by this Court in *People v Cameron*, 319 Mich App 215; 900 NW2d 658 (2017). While this Court in *Cameron* agreed that MCL 769.1k(1)(b)(*iii*) imposes a tax rather than a fee, the Court found that the tax imposed did not violate the "Distinct Statement Clause of Michigan's Constitution," Const 1963, art 4, § 32, or "the separation-of-powers provision of Const 1963, art 3 § 2." *Cameron*, 319 Mich App at 236. Accordingly, we reject this claim of error.

---

(2007). "Malice is defined as 'the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.' " *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002) (citation omitted).

Affirmed in part, vacated in part, and remanded for resentencing. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto