*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TYREEK D. WILKERSON,

Defendant-Appellant.

UNPUBLISHED
October 15, 2024
2:51 PM

No. 366343
Oakland Circuit Court
LC No. 21-278374-FH

Before: GADOLA, C.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

Defendant, Tyreek D. Wilkerson, appeals as of right his jury trial conviction of transporting a person for the purpose of prostitution, MCL 750.459. Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 3 to 20 years' imprisonment. We affirm.

## I. FACTS

This case arises out of a sting operation conducted by officers of the Madison Heights Police Department, to investigate sex trafficking and prostitution. In the operation, Sergeant Jordan Rieck responded to an online advertisement for sexual services with Shonda Harrison, defendant's girlfriend. A cell phone with a number ending in 6764 ("the 6764 phone"), was listed on the advertisement. Rieck texted the 6764 phone and arranged to meet Harrison for prostitution services at the Baymont Hotel in Madison Heights.

On January 20, 2021, defendant drove Harrison to meet Rieck at the Baymont. When defendant and Harrison arrived, defendant stayed in the car and Harrison went inside. Harrison met Rieck in a hotel room. Rieck asked Harrison for oral sex, in exchange for $300. Harrison agreed. Rieck then signaled for officers to come into the room and arrest Harrison.

Rieck left the hotel room and found defendant outside, sitting in his car on his phone. Defendant then exited his vehicle and was approached by Rieck. Defendant told Rieck he knew Harrison was there for a "date." He was arrested and charged with transportation of a person for the purpose of prostitution. Police confiscated the 6764 phone from defendant's person. Defendant was taken to the Madison Heights Police Department. When he was booked, defendant

-1-

gave police the number of the 6764 phone. Defendant was interrogated by police. When interrogated, defendant gave a different phone number ending in 4879 ("the 4879 phone"). Another phone, with an associated number ending in 7989 ("the 7989 phone") was confiscated from Harrison's person at the scene.

During opening statements at trial, defense counsel stated that he planned to show the jury a video of defendant's interrogation by police following arrest. Defense counsel explained that, in the video, defendant denies having knowledge of prostitution. During trial, the prosecution played two videos showing the outside of the Baymont. One such video was described as a video of defendant being arrested. On Rieck's cross-examination, defense counsel stated he was under the false assumption the arrest video included footage of defendant's interrogation. He moved to admit the video, but the trial court determined the video was inadmissible hearsay.

In addition to the videos of defendant's arrest, the trial court admitted a significant amount of evidence extracted from the 6764 phone. Defendant contended the 6764 phone used to belong to him, but he gave the phone to Harrison in November 2020. However, the evidence extracted from the phone showed the phone belonged to defendant, and it was used to arrange prostitution. Defendant testified he had no knowledge of Harrison's prostitution.

The jury found defendant guilty of transporting a person for the purpose of prostitution and he was sentenced as noted. Defendant now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant asserts there was insufficient evidence presented at trial to prove he *knowingly* transported a person for the purpose of prostitution. We disagree.

### A. STANDARD OF REVIEW

"We review de novo challenges to the sufficiency of the evidence, examining the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found every essential element proved beyond a reasonable doubt." *People v Mitchell*, 301 Mich App 282, 289; 835 NW2d 615 (2013).

### B. ANALYSIS

"When a defendant challenges the sufficiency of the evidence in a criminal case, this Court considers whether the evidence, viewed in a light most favorable to the prosecution, would warrant a reasonable juror to find guilt beyond a reasonable doubt." *People v Werner*, 254 Mich App 528, 530; 659 NW2d 688 (2002).

A challenge to the sufficiency of evidence underpinning a conviction implicates due process. Due process requires that a prosecutor introduce evidence sufficient to justify a trier of fact to conclude that the defendant is guilty beyond a reasonable doubt. The prosecutor is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince the jury in the face of whatever contradictory evidence the defendant may provide. We

draw all reasonable inferences and credibility choices in support of the jury's verdict. [*People v Darga*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363178); slip op at 5 (quotation marks and citations omitted).]

In appeals involving the sufficiency of the evidence, "[a]ll conflicts in the evidence must be resolved in favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). "It is the jury's task to weigh the evidence and decide which testimony to believe." *Id*. (quotation marks and citation omitted).

Defendant was convicted under MCL 750.459, which "proscribes transporting a female into, through, or across this state *either* for the purpose of prostitution or intending to induce, entice, or compel her to become a prostitute." *People v Morey*, 461 Mich 325, 333; 603 NW2d 250 (1999) (quotation marks and citation omitted). Under the statute:

A person shall not *knowingly* transport or cause to be transported, or aid or assist in obtaining transportation for, by any means of conveyance, into, through, or across this state, any person for the purpose of prostitution or with the intent and purpose to induce, entice, or compel that person to become a prostitute. [MCL 750.459 (emphasis added).]

We find there was sufficient evidence presented at trial from which a reasonable jury could find defendant guilty of transporting a person for the purpose of prostitution. The defense does not dispute the fact defendant transported Harrison to a hotel. The only element at issue is whether defendant had knowledge Harrison was going to participate in prostitution.

During trial, the prosecution presented the testimony of Sgt. Jordan Rieck, the officer who arranged the sting operation and spoke to defendant at the scene. Rieck testified that at the scene of the crime, defendant initially told him he was taking Harrison to see a friend. However, defendant eventually said "he was gonna be real with [Rieck]," and he knew Harrison "was going to see a date." Rieck testified, based on his experience of working on a significant number of cases involving prostitution, a "date" was a term used to describe "a sexual encounter" with a "prostitute or sex provider." From this testimony, a reasonable juror could infer defendant had knowledge of Harrison's participation in prostitution.

Defendant's argument focuses on whether defendant had possession of the 6764 phone, which was used to arrange Harrison's act of prostitution. Defendant argues the 6764 phone was not his personal phone. According to defendant, he gave the phone to Harrison in November 2020, and had not used the phone since. However, even if defendant did not have possession of the 6764 phone as he claims, a jury could still infer he had knowledge of the prostitution based on his statement to Rieck. It is not necessary to prove defendant arranged the act of prostitution to find him guilty. The relevant question is whether defendant knew Harrison was going to the hotel to participate in an act of prostitution.

Additionally, the evidence extracted from the 6764 phone further supports a finding of defendant's guilt. The 6764 phone number was listed in the online advertisement for sexual services, and Rieck texted the 6764 phone to arrange his meeting with Harrison. Further, the data

from the 6764 phone shows the phone was used to arrange additional acts of prostitution, as evidenced by text exchanges arranging sexual services, and the multiple visits to escort websites in the phone's internet history.

Though not dispositive of defendant's guilt, the prosecution nonetheless presented a significant amount of evidence showing the phone belonged to defendant. Rieck testified he took the phone from defendant's person at the time of the arrest. Defendant disputes this testimony, arguing that in Rieck's police report, he wrote the 6764 phone was found on Harrison's person, rather than defendant's. Rieck testified this was a mistake in the report, due to misinformation provided by Homeland Security.[1] Although the defense presented evidence of the police report, which called into question the credibility of Rieck's testimony, there was sufficient evidence for the jury to believe Rieck. Thus, we will not interfere with the jury's credibility determination. See *Unger*, 278 Mich App at 222.

The data extracted provided further evidence the 6764 phone belonged to defendant. Defendant argued the phone used to belong to him, but he gave the phone to Harrison in November 2020, and had not used it since. However, there is evidence suggesting defendant used the phone as his personal phone beyond November 2020. In a Facebook message from December 26, 2020, from defendant's account, he wrote: "Huh call me 5864226764." There were photos of defendant on the phone, including a photo of his driver's license. Defendant's personal e-mail and the e-mail address of defendant's business were logged in on the phone. Also, Rieck testified that when defendant was booked, he gave the 6764 phone as his personal phone number.

From this evidence, a reasonable jury could find that defendant knew Harrison would be participating in prostitution when he transported her to the hotel. Therefore, there was sufficient evidence to support defendant's conviction.

III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues his trial counsel was ineffective because counsel failed to review exhibits and anticipate the admissibility of the interrogation video. We disagree.

A. PRESERVATION AND STANDARD OF REVIEW

The issue of ineffective assistance of counsel may be preserved by moving in "the trial court for a new trial or a *Ginther* hearing," *People v Jackson*, 313 Mich App 409, 431; 884 NW2d 297 (2015), citing *People v Ginther*, 390 Mich 436, 442-443, 212 NW2d 922 (1973), or "by filing in this Court a motion for remand to the trial court for a *Ginther hearing*." *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020) (footnote omitted). "Because these claims

---

[1] The prosecutor at trial explained that the police received assistance from the U.S. Department of Homeland Security to "crack" or extract data from the two cellphones at issue. The report from Homeland Security falsely stated that data was only able to be extracted from the 7989 phone found on Harrison's person, when the extracted data was actually from the 6764 phone found on defendant's person. Sgt. Rieck's report thus mistakenly stated that the 6764 phone was found on Harrison's person.

of ineffective assistance of counsel are unpreserved, our review is limited to errors apparent on the record." *Unger*, 278 Mich App at 253. "As with statutory interpretation, this Court applies the plain and unambiguous language of a court rule." *People v Cowhy*, 330 Mich App 452, 461; 948 NW2d 632 (2019).

## B. ANALYSIS

Both the Michigan and the United States Constitutions provide criminal defendants the right to assistance of counsel. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012); see also Const 1963, art 1, § 20; US Const, Am VI. "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51.

"In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id*. at 52, citing *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 674 (1984). "Initially, a court must determine whether the strategic choices [were] made after less than complete investigation." *Id*. (quotation marks and citation omitted). "A sound trial strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgments." *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004).

Defendant argues his counsel's representation was objectively unreasonable because he failed to properly review the prosecution's proposed exhibits and anticipate the admissibility of the interrogation video. During trial, defense counsel wrongly assumed the prosecution was going to offer for admission the video of defendant's police interrogation because the prosecution said it was moving to admit a video of defendant's arrest. Defense counsel was under the incorrect impression the interrogation was included in the arrest video. After realizing the video of defendant's interrogation was not offered for admission by the prosecution, defense counsel asked the prosecution to stipulate to the admission of the video. The prosecution refused, and the trial court found the interrogation video was inadmissible because it was hearsay.

We find defense counsel's representation did not fall below an objective standard of reasonableness. See *Trakhtenberg*, 493 Mich at 51. Defense counsel may have made an oversight by failing to thoroughly review proposed exhibits before trial. But once he realized the interrogation video was not offered for admission by the prosecution, defense counsel moved for admission, thereby curing his initial mistake in failing to review the exhibits thoroughly.

"In addition to proving that defense counsel's representation was constitutionally deficient, defendant must show that but for counsel's deficient performance, a different result would have been reasonably probable." *Trakhtenberg*, 493 Mich at 55-56 (quotation marks and citations omitted). Even if defense counsel did act objectively unreasonably when failing to thoroughly review evidence, this did not prejudice defendant because it likely had no effect on the outcome of the case. The interrogation video was not presented at trial, not because of defense counsel's failure, but because the trial court found the video was inadmissible hearsay. Defendant does not challenge whether the trial court erred by finding the video was inadmissible hearsay. He only

challenges his counsel's failure to review proposed exhibits. There is nothing to suggest, had defense counsel reviewed the exhibits before trial and moved to admit the interrogation video, that the trial court would have admitted it into evidence. In sum, defense counsel's performance was not objectively unreasonable, nor did his performance prejudice defendant.

## IV. SUPPRESSION OF EVIDENCE

Defendant argues in his Standard 4 brief that the prosecution suppressed video evidence of defendant's interrogation and booking. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

A claim of suppression of evidence may be preserved "by moving in the trial court for a new trial or for relief from judgment." *People v Burger*, 331 Mich App 504, 516; 953 NW2d 424 (2020). Similarly, a claim involving newly discovered exculpatory evidence is preserved "by moving for a new trial in the lower court under MCR 2.611(A)(1)(f) or by moving for relief from judgment under MCR 2.612(C)(1)(b)." *People v Cox*, 268 Mich App 440, 448; 709 NW2d 152 (2005). Defendant failed to move for a new trial or relief from judgment, so the issue is unpreserved. Because these issues are unpreserved, "our review is limited to plain error affecting substantial rights." *Id.*; see also *Burger*, 331 Mich App at 516.

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. [*People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).]

## B. ANALYSIS

"The Supreme Court of the United States held in *Brady* that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014), quoting *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). "In order to establish a *Brady* violation, a defendant need only demonstrate that the government suppressed evidence that is both favorable to the defendant and material." *Chenault*, 495 Mich at 160. "[E]vidence that the defense knew of favorable evidence, will reduce the likelihood that the defendant can establish that the evidence was suppressed for purposes of a *Brady* claim." *Id.* at 155. "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Abcumby-Blair*, 335 Mich App at 218.

Defendant argues the prosecution suppressed evidence of the booking video and interrogation video. We disagree. There is nothing to suggest the prosecution suppressed any evidence. Regarding the interrogation video, defense counsel made it clear at trial that the defense was aware of the video's existence. He attempted to admit the interrogation video. During opening statements, defense counsel discussed the contents of the interrogation video. It is obvious he had

access to the video before trial. The video was not played at trial, not because of suppression of evidence, but because the trial court found it inadmissible.[2]

Regarding the booking video, it is unclear if this video exists. During trial, defense counsel inquired about video of defendant's booking, and Rieck stated it would be videotaped. However, during his closing statement, defense counsel stated:

> Now, the booking process was supposed to be on video and taped. But when he called this number that he claimed he took from [defendant] and that it rang, we gotta again take his word for it. That ain't on video. But we gotta take this officer's word that that's true.

These statements indicate the booking was supposed to be videotaped, but was not. If this is the case, the prosecution cannot suppress evidence of something that does not exist. There is no evidence the prosecution suppressed evidence of defendant's booking. Defense counsel specifically inquired about the booking video during trial, indicating he had some knowledge regarding whether the booking was videotaped.

The booking video, if it existed, was potentially favorable to the defense, but there is nothing to suggest the video would have been exculpatory. Even if defendant gave a different phone number at booking, rather than the 6764 number Rieck claimed defendant gave, there is still a significant amount of evidence showing defendant had knowledge of the prostitution based on statements defendant made to Rieck and evidence found on the 6764 phone. A booking video may have been favorable impeachment evidence, if the video contradicted Rieck's testimony regarding what phone number defendant gave during the booking process. See *Abcumby-Blair*, 335 Mich App at 218. Nevertheless, even if the video had been favorable, it was not material because defendant was able to testify to his statements during booking. Defendant testified he may have given the 6764 number if he could not remember his other phone number. The number defendant gave during booking has minimal significance in the grand scheme of the case. The prosecution did not suppress evidence, and thus no clear error was committed.

## V. NEWLY DISCOVERED EVIDENCE

Defendant's Standard 4 Brief states newly discovered exculpatory evidence is available, but does not explicitly request a new trial. We find this issue is abandoned on appeal. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (citation omitted).

---

[2] Further, the interrogation video is not necessarily favorable. Although the video shows defendant denying having knowledge of prostitution, the video also shows defendant giving a phone number inconsistent with the number he provided during his trial testimony. The video is also not material because defendant was able to present his own testimony during trial. It was not necessary to play a video of him giving the same or similar statements.

In this case, defendant describes evidence that was not presented at trial: (1) testimony of a newly discovered witness, and (2) Google GPS evidence showing defendant's phone number ended with 8999. However, defendant fails to include any caselaw regarding the admission of newly discovered exculpatory evidence. Defendant also fails to provide any affidavits or any other proof of the newly discovered evidence.

Affirmed.

/s/ Michael F. Gadola
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado